

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1276-07

**TOMMY G. LASTER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, AND HERVEY, JJ., joined. COCHRAN, J., filed a dissenting opinion in which PRICE, JOHNSON, AND HOLCOMB, JJ., joined.

### O P I N I O N

Tommy G. Laster appealed his conviction, claiming that the evidence was legally and factually insufficient. When reviewing the legal sufficiency of the evidence, the Forth Worth Court of Appeals stated that circumstantial evidence of intent is reviewed less rigorously than other elements of an offense.[1] This statement is incorrect. We, however, uphold Laster's

---

[1] *Laster v. State*, 229 S.W.3d 788, 791 (Tex. App.—Fort Worth 2007).

conviction because the evidence is legally and factually sufficient.

## I. Background

After buying eggs for their mother at a convenience store on January 30, 2005, B.T., who was eight, and her brother, who was ten, began to walk home. While walking on the sidewalk, B.T. pushed a bicycle, and her brother walked beside her. The children saw a man, carrying a closed umbrella, walking toward them. To allow the man to pass, the children leaned against a fence next to the sidewalk. Instead of passing by, the man grabbed B.T.'s arm. The man then put his arm around B.T.'s waist and tried to pull her away. B.T. let go of the bicycle and yelled for help. Her brother grabbed her hand, and a tug of war over B.T. ensued. The man abruptly let go of B.T. when a driver honked the car's horn. The man then continued to walk down the sidewalk toward the store. The children ran home and told their mother that a man tried to take B.T.

B.T.'s mother reported the incident to the police. Later that day, B.T.'s mother saw a man walking down the street. The man, Tommy G. Laster, looked like the man that B.T. had described to the police. B.T.'s mother called the police and continued to follow Laster. The police arrived and arrested Laster based, in part, on the children identifying him as the man who grabbed and pulled B.T. After the police arrested Laster, he gave a written statement describing what happened:

> While [the children] were coming toward me, the voices in my head started telling me that I would be better off dead. As I got closer to the kids and I was watching them, the voices in my head told me to grab the little girl. The voices were telling me to "Get her, get her." I grabbed her using my right arm around

her waist. I saw her long hair and the side of her face. I also saw the little boy next to her. That is when I realized that I needed to let go of her because she was a little girl and I knew how that would look to the cars going by. I was thinking to myself, 'Did I actually grab her in the broad daylight with all of this traffic[?] I must be nuts.' She looked at me. She looked scared and wide eyed. I let her go and hurried my pace to get to the store . . . .

Laster was charged with injury to a child and attempted aggravated kidnapping. The jury convicted him of both counts, and the trial judge sentenced Laster to twenty years' confinement for injuring a child and forty years' confinement for attempting to kidnap B.T.

On appeal to the Forth Worth Court of Appeals, Laster challenged only his conviction for attempted aggravated kidnapping.[2] He alleged that the evidence was legally and factually insufficient to prove that he had the intent to abduct B.T.[3] To prove that Laster had the intent to abduct B.T., the State had to show that Laster specifically intended to secrete or hold B.T. "in a place where [s]he [was] not likely to be found; or us[ed] or threaten[ed] to use deadly force."[4] The court of appeals agreed with Laster that there was no evidence that he attempted to use deadly force.[5] But the court of appeals affirmed Laster's conviction, holding that the evidence was legally and factually sufficient to prove that Laster had the intent to hold or secrete B.T. in a place where she was unlikely to be found.[6] Deferring to the jury's finding,

---

[2] *Id.* at 791 n.1.

[3] *Id.* at 793.

[4] T EX. PENAL CODE ANN. § 20.01(2) (Vernon 2003).

[5] *Laster*, 229 S.W.3d at 793.

[6] *Id.* at 793-95.

the court rejected Laster's argument that grabbing B.T. in a public place showed that he did not intend to take her anywhere.[7] Rather, the court held that the "very brazenness and public nature of [Laster's] actions" could lead a reasonable jury to infer that Laster did intend to take B.T.[8] The jury was also free to reject Laster's argument that his confession showed his intent only to grab B.T.[9] In the court's view, the jury could have reasonably inferred that Laster tried to isolate B.T. from her brother and abandoned his plan only when he realized the risk of being caught.[10]

In dissent, Justice Dauphinot concluded that there was no evidence of Laster's intent to take B.T.[11] She said that there were other reasonable explanations for why Laster grabbed B.T.[12] For example, he wanted to steal her bicycle or sexually abuse her on the sidewalk.[13] Given these other explanations, Justice Dauphinot criticized the majority for holding that a reasonable factfinder could infer that Laster intended to hold or secrete B.T. in a place that she was unlikely to be found.

Laster filed a petition for discretionary review, contending that the court of appeals

---

[7]  *Id.* at 793.

[8]  *Id.* at 794.

[9]  *Id.* at 793.

[10]  *Id.*

[11]  *Id.* at 795 (Dauphinot, J., dissenting).

[12]  *Id.* (Dauphinot, J., dissenting).

[13]  *Id.* (Dauphinot, J., dissenting).

applied an incorrect standard of review by affording too much deference to the jury's fact determination when evaluating the circumstantial evidence of intent. Laster also asked us to adopt Justice Dauphinot's view that the evidence was legally and factually insufficient to support his conviction. We granted review and now affirm the court of appeals's judgment.

## II. Sufficiency Standards of Review

### A. Legal Sufficiency

The Due Process Clause to the United States Constitution requires that a criminal conviction be supported by a rational trier of fact's findings that the accused is guilty of every essential element of a crime beyond a reasonable doubt.[14] This due process guarantee is safeguarded when a court reviews the legal sufficiency of the evidence.[15] During such a review, an appellate court must not usurp the role of the factfinder.[16] Appellate courts are ill-equipped to weigh the evidence; unlike the factfinder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record.[17] Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally,[18] and we have final jurisdiction to review the legal

---

[14] *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

[15] *Id.* at 319.

[16] *Moreno v. State*, 755 S.W.2d 866, 867 (1988).

[17] *Id.*

[18] *Jackson*, 443 U.S. at 317.

sufficiency of the evidence.[19]  When conducting a legal sufficiency review, a court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt."[20]  In doing so, we assess all of the evidence "in the light most favorable to the prosecution."[21]  We have said that this same standard applies equally to circumstantial and direct evidence.[22]  After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element.[23]

## B.  Factual Sufficiency

A verdict must also be supported by factually sufficient evidence.  But unlike a legal sufficiency review, which is a federal due process requirement, a factual sufficiency review is a creature of state law.[24]  On direct appeal, a court must begin its factual sufficiency review with the assumption that the evidence is legally sufficient under *Jackson*.[25]  Evidence that is

---

[19]  *Combs v. State*, 643 S.W.2d 709, 717 (Tex. Crim. App. 1982), *overruled on other grounds by Butler v. State*, 769 S.W.2d 234 (Tex. Crim. App. 1989).

[20]  *Jackson*, 443 U.S. at 318-19 (emphasis in original).

[21]  *Id.* at 319.

[22]  *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001).

[23]  *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

[24]  *Watson v. State*, 204 S.W.3d 404, 406 (Tex. Crim. App. 2006).

[25]  *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (citing *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1995)).

legally sufficient, however, can be deemed factually insufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence."[26] When a court of appeals conducts a factual sufficiency review, it must defer to the jury's findings.[27] We have set out three "basic ground rules" implementing this standard.[28] First, the court of appeals must consider all of the evidence in a neutral light,[29] as opposed to in a light most favorable to the verdict.[30] Second, the court of appeals may only find the evidence factually insufficient when necessary to "prevent manifest injustice."[31] Although the verdict is afforded less deference during a factual sufficiency review, the court of appeals is not free to override the verdict simply because it disagrees with it.[32] Third, the court of appeals must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict.[33] This requirement serves two related purposes. First, it supports the court of appeals's

---

[26] *Watson*, 204 S.W.3d at 414-15.

[27] *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[28] *Watson*, 204 S.W.3d at 414.

[29] *Id.*

[30] *Id.*

[31] *Cain*, 958 S.W.2d at 407.

[32] *Id.*

[33] *Watson*, 204 S.W.3d at 414.

judgment that a manifest injustice has occurred.[34] And second, it assists us in ensuring that the standard of review was properly applied.[35]

Unlike our jurisdiction over legal sufficiency decisions, our jurisdiction over the court of appeals's factual sufficiency decisions is limited.[36] The Factual Conclusivity Clause gives final appellate jurisdiction to the court of appeals on questions of fact brought before the court.[37] We review the court of appeals's factual sufficiency analysis to ensure that the court applied the correct legal standard and considered all of the relevant evidence.[38] We do not conduct a de novo factual sufficiency review.[39] If we determine that the court of appeals applied the wrong standard or misapplied the correct standard, the case must be remanded to the court of appeals to conduct a proper factual sufficiency review.[40]

With the proper roles of the factfinder, the court of appeals, and our Court put into perspective, we now evaluate the court of appeals's legal and factual sufficiency analyses.

### III. Analysis

Laster claims that the court of appeals erred by finding that the evidence was legally

---

[34] *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

[35] *Id.*

[36] *Cain*, 958 S.W.2d at 408.

[37] T EX. CONST. art. V, § 6.

[38] *Lancon*, 253 S.W.3d at 704.

[39] *Id.*

[40] *Cain*, 958 S.W.2d at 408.

and factually sufficient to show that he intended to hold or secrete B.T. in a place where she was not likely to be found. In doing so, Laster contends that the court of appeals incorrectly applied a less-rigorous standard when reviewing the circumstantial evidence of intent. Laster appears to argue that the court of appeals's misstatement of law affected both the court's factual and legal sufficiency reviews. His argument, however, is not entirely clear because, like the court of appeals, Laster combines his factual and legal sufficiency discussions, thereby discounting any variance between the two standards. We have stated "that determining the legal and factual sufficiency of evidence requires the implementation of separate and distinct standards."[41] Courts and litigants should not combine their legal and factual sufficiency analyses. So while we recognize that any analyses of the facts in a given case will naturally overlap, a separate review under the applicable standard is necessary to ensure that the law was properly applied.

After reading the court of appeals's opinion, we determine that Laster is partially correct. The court of appeals applied the wrong standard only when reviewing the legal sufficiency of the evidence. We, however, affirm the court of appeal's judgment because the evidence is legally sufficient and the court of appeals applied the correct factual sufficiency standard.

## A. Standard of Review

Laster criticizes the court of appeals for applying an unduly lenient standard when

---

[41] *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

reviewing the circumstantial evidence of intent. Quoting our decision in *Margraves v. State*,[42] the court of appeals stated that "[c]ircumstantial evidence of a defendant's guilty knowledge is not 'required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements.'"[43] Laster contends that this statement represents a holdover from the obsolete jury instruction on circumstantial evidence and is improper.

On this point, we agree with Laster's reading of the court of appeals's opinion and disavow any notion that circumstantial evidence of intent is reviewed less stringently than any other type of evidence. The quoted language from *Margraves* was taken out of context and is not part of our modern sufficiency review. Circumstantial evidence of intent must be reviewed with the same scrutiny as other elements of an offense.

The passage in *Margraves*, cited by the court of appeals, was first articulated in our *Brown v. State* decision.[44] The issue in *Brown* was whether the affirmative link test, used to determine whether an accused intended to possess drugs, still applied after the reasonable hypothesis test was abolished.[45] The reasonable hypothesis test developed out of our suspicion of convictions based wholly on circumstantial evidence.[46] The test was

---

[42] 34 S.W.3d 912 (Tex. Crim. App. 2000).

[43] *Laster*, 229 S.W.3d at 791 (quoting *Margraves*, 34 S.W.3d at 919).

[44] 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

[45] *Id.* at 745.

[46] *Hankins v. State*, 646 S.W.2d 191, 207 (Tex. Crim. App. 1983) (Onion, P.J., dissenting).

implemented at trial by instructing the jury that circumstantial evidence must "exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt."[47] The same standard carried over on appeal to test the sufficiency of circumstantial evidence.[48] But once we recognized that circumstantial evidence was as valuable as direct evidence, we abandoned the reasonable hypothesis test.[49]

To explain why the affirmative link test survived the termination of the reasonable hypothesis test, we pointed to opinions applying the affirmative link test but not mentioning the reasonable hypothesis test.[50] We then downplayed the precedential value of drug cases mentioning the reasonable hypothesis test.[51] We stated that, although the cases mentioned the reasonable hypothesis test, the rhetorical recital of the standard "should not, however, be taken to mean that circumstantial evidence of a defendant's guilty knowledge was required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements" because the test was never applied.[52] We also noted that we rarely applied the

---

[47] *Geesa v. State*, 820 S.W.2d 154, 156 n.2 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

[48] *Girard v. State*, 631 S.W.2d 162, 163 (Tex. Crim. App. 1982).

[49] *Geesa*, 820 S.W.2d at 155.

[50] *Brown*, 911 S.W.2d at 746-47.

[51] *Id.* at 746.

[52] *Id.* at 747.

reasonable hypothesis test to circumstantial evidence of intent in any type of case.[53]  While circumstantial evidence of most elements warranted the reasonable hypothesis test, the test was rarely applied to circumstantial evidence of intent because it was unworkable in that context.[54]  Excluding every reasonable hypothesis of what the accused was thinking was close to impossible—only the accused can absolutely know his or her intent.[55]  Because other reasonable, noncriminal explanations for a defendant's conduct always exist, a true application of the reasonable hypothesis analysis would lead to an acquittal in most cases.[56]

The court of appeals, in this case, and this Court in *Margraves* took the passage in *Brown* to mean that circumstantial evidence of intent is to be reviewed less stringently than circumstantial evidence of other elements.  But any distinction between circumstantial evidence of intent and other elements was rendered obsolete when the reasonable hypothesis test was abandoned.  Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt.  Under the current standard of review, there is no reason to treat circumstantial evidence of an accused's mental state any differently than circumstantial evidence of other elements.  Just as circumstantial evidence is reviewed under the same standard as direct evidence, circumstantial evidence of intent is reviewed

---

[53] *Id.*

[54] *Matson v. State*, 819 S.W.2d 839, 845-46 (Tex. Crim. App. 1991).

[55] *Id.* at 846.

[56] *Id.*

under the same standard as circumstantial evidence of other elements.  In a sufficiency analysis, all of the evidence admitted at trial to support the conviction should be reviewed equally on appeal.

## B.  Applicable Law

To prove that Laster committed the offense of attempted aggravated kidnapping, the State was required to present sufficient evidence that Laster did "an act amounting to more than mere preparation" with the specific intent to commit aggravated kidnapping.[57]  A person commits the offense of aggravated kidnapping if "he intentionally or knowingly abducts another person" and commits an aggravating element.[58]  Thus, two elements are required to prove aggravated kidnapping: (1) intent or knowledge to abduct, and (2) commission of an aggravating element.

"'Abduct' means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force."[59]  "Abduct" then includes two elements.[60]  First, the defendant must have restrained another, which is the *actus reus* requirement.[61]  Second, the

---

[57] TEX. PENAL CODE ANN. § 15.01 (Vernon 1994).

[58] TEX. PENAL CODE ANN. § 20.04 (Vernon 1995).

[59] TEX. PENAL CODE ANN. § 20.01(2) (Vernon 2003).

[60] *Brimage v. State*, 918 S.W.2d 466, 475-76 (Tex. Crim. App. 1994).

[61] *Id*. at 476.

defendant must have had the specific intent to prevent liberation, which is the *mens rea* requirement.[62] Secreting or holding another where he or she is unlikely to be found is part of the *mens rea* requirement of the offense—not the *actus reus*.[63] This is an important distinction because the State is not required to prove that the defendant actually secreted or held another.[64] Instead the State must prove that the defendant restrained another with the specific intent to prevent liberation by secreting or holding the person.[65] The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found.[66]

A kidnapping is aggravated when a defendant intentionally or knowingly abducts another: (1) with the specific intent to accomplish one of six purposes or (2) "uses or exhibits a deadly weapon during the commission of the offense."[67] The six purposes are as follows:

(1) hold him for ransom or reward;
(2) use him as a shield or hostage;
(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

---

[62] *Id.*

[63] *Id.* at 475.

[64] *Id.* at 476.

[65] *Id.*

[66] *Id.* at 475.

[67] TEX. PENAL CODE ANN. § 20.04(a)-(b).

(4) inflict bodily injury on him or violate or abuse him sexually;

(5) terrorize him or a third person; or

(6) interfere with the performance of any governmental or political function.[68]

Here, the State was required to prove that Laster committed an act beyond mere preparation with the intent to secrete or hold B.T. and commit an aggravating element—not that Laster could, or did, actually accomplish this purpose.

## C. Legal Sufficiency Review

Laster argues that the evidence presented at trial was legally insufficient to support the jury's finding that he intended to hold or secrete B.T. in a place where she was unlikely to be found. We disagree.

In support of his conclusion, Laster points to three circumstances that he contends show that he had no such intent. We will consider each of these arguments in turn.

First, Laster suggests that the State did not prove that he intended to take B.T. because he grabbed her in front of possible eyewitnesses. But the State did not have to prove that he actually accomplished his purpose or even that he could have accomplished his purpose.[69] The State only had to prove that he had such a purpose.[70] Further, as the court of appeals noted, the jury was not precluded from inferring that Laster intended to secrete or hold B.T.

---

[68] T EX. PENAL CODE ANN. § 20.04(a).

[69] *Brimage*, 918 S.W.2d at 476.

[70] *Id.*

in a place where she was unlikely to be found simply because he restrained her in public.[71]

We have recognized that a rational factfinder can infer such an intent when a defendant isolates a person from anyone who might be of assistance.[72] B.T. testified that Laster grabbed her around the waist then tried to pull her away. Corroborating B.T.'s testimony, her brother stated that when Laster tried to pull B.T. away, he grabbed her arm and pulled back. The jury could reasonably infer from this testimony that by pulling B.T. away from her brother, the only person available to help her, Laster intended to hold or secrete B.T. in a place where she was unlikely to be found.

Second, relying on Justice Dauphinot's dissenting opinion, Laster argues that there are other reasonable explanations for why he grabbed B.T. For example, he wanted to steal her bicycle or sexually abuse her. Without proof that one explanation was more reasonable than another, Laster contends, relying on Justice Dauphinot's reasoning, that the evidence was insufficient. But this reasoning invades the factfinder's role. It is up to the factfinder to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[73] By focusing on other reasonable alternatives to explain why Laster grabbed B.T., Justice Dauphinot improperly applied the outdated

---

[71] *Laster*, 229 S.W.3d at 793; *see Megas v. State*, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd).

[72] *Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985); *Megas*, 68 S.W.3d at 240.

[73] *Jackson*, 443 U.S. at 319.

reasonable hypothesis construct, thereby placing herself in the "posture of a 'thirteenth juror.'"[74]  As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable.  As stated above, the evidence showed that Laster grabbed and then pulled B.T. toward him.  Laster continued to pull B.T. after her brother came to her aid.  It was not until a driver honked the car's horn that Laster released B.T.  A factfinder could reasonably infer from this evidence that Laster was planning to do more than just steal her bike or molest her.

Finally, Laster argues that the evidence showed that he intended only to grab B.T. because his confession did not imply otherwise and he let go of her within a matter of seconds.  Contrary to Laster's claim that there is only one interpretation of his confession, there is another rational interpretation.  Laster not only said that the voices in his head were telling him to "grab the little girl," but they were also telling him to "'[g]et her, get her.'"  He confessed to restraining B.T. until he "saw the little boy next to her" and realized that he "needed to let go of her because she was a little girl and [he] knew how that would look to the cars going by."  Even if this evidence was believed, a rational factfinder could infer that Laster formed the intent to take B.T. when he grabbed her and abandoned his plan when he realized that other people were witnessing his actions.  Indeed, the evidence presented at trial showed that Laster released B.T. when a driver honked the car's horn.  Rather than concluding that Laster released B.T. because he just wanted to grab her, viewed in the light

---

[74]  *See Geesa*, 820 S.W.2d at 159.

most favorable to the verdict, the evidence showed that Laster formed the intent to take B.T. when he grabbed her and let go because he feared that he may be caught.[75]

In dissent, Judge Cochran claims that the evidence is legally insufficient to show Laster's intent to (1) hold or secrete B.T. in a place where she was unlikely to be found, or (2) commit an aggravating element. We will address both her contentions.

Like Justice Dauphinot, Judge Cochran claims that she can only speculate about what Laster intended when he grabbed B.T. She lists scenarios that Laster possibly could have intended and concludes that, because the evidence does not support those scenarios, it cannot support the jury's verdict. In doing so, she discards her robe, this time to assume the role of a super-juror,[76] ready and willing to nullify the unanimous verdict of twelve individuals. However, as an appellate court, we are not permitted to supplant our judgment for that of a rational factfinder—no matter how tempting. So while Judge Cochran purports to view the evidence in the light most favorable to the prosecution, she ignores the evidence that supports the jury's verdict that Laster intended to hold or secrete B.T. in a place where she was unlikely to be found—Laster did not simply grab at B.T.; he pulled her away.

Next, although Laster does not claim that the evidence supporting the aggravating element is insufficient, Judge Cochran claims that it is. But the jury could reasonably infer

---

[75] *Cf. Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003) (explaining that a defendant does not "voluntarily release[] the victim in a safe place" in the context of Section 20.04(d) if the victim is rescued or escapes).

[76] *See cf. State v. Colyandro*, 233 S.W.3d 870, 887-96 (Tex. Crim. App. 2007) (Cochran, J., dissenting).

from Laster's actions that he intended to inflict bodily injury on B.T. Bodily injury is broadly defined in the Penal Code as "physical pain, illness, or any impairment of physical conduction."[77] This definition encompasses even relatively minor physical contact if it constitutes more than offensive touching.[78] Direct evidence that a victim suffered pain is sufficient to show bodily injury.[79] B.T. testified that she felt pain when Laster grabbed her around the waist and pulled her. Because "[o]ne's acts are generally reliable circumstantial evidence of one's intent,"[80] the jury could reasonably infer that Laster intended to do exactly what he did—to inflict bodily injury on B.T.

Given the evidence presented at trial, a rational trier of fact, charged with discerning Laster's intent from the surrounding circumstances, could have found beyond a reasonable doubt that Laster intended to inflict bodily injury on B.T. and hold or secrete her in a place she was unlikely to be found. Affording appropriate deference to the jury's verdict, we therefore hold that the evidence supporting Laster's conviction is legally sufficient.

## D. Factual Sufficiency Review

Laster also asks us to find that the evidence is factually insufficient. As stated above, we are not, however, constitutionally permitted to conduct a de novo review of a court of

---

[77] TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon 2003).

[78] *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

[79] *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975).

[80] *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.-Houston [1st Dist.] 2002, no pet.).

appeals's factual sufficiency decision.[81] Our jurisdiction is limited to reviewing whether the court of appeals applied the correct rule of law.[82] We find that the court of appeals applied the correct standard of review and considered all of the relevant evidence before finding that it was factually sufficient.

The court of appeals's analysis followed all of the ground rules that are necessary to ensure that the jury's findings are respected. The court of appeals considered all of the relevant evidence, opposing and supporting the verdict, in a neutral light. The court discussed the evidence that Laster argued opposed the verdict: he was on foot; he never used a weapon; he never made any threats; he grabbed B.T. in public; he let go of B.T. quickly; he continued walking to the store; and, he told police that he grabbed B.T. only because of the voices in his head. The court then discussed the evidence supporting the verdict: Laster was a total stranger to B.T.; Laster scared and surprised both children when he grabbed B.T.; Laster tried to pull B.T. from her brother; and, Laster did not let B.T. go until a car drove by.

The court explained why, despite Laster's claim, the evidence was factually sufficient. Laster did not present any evidence at trial, so the only question that the court of appeals faced was whether the State's evidence was so weak that the jury's determination was manifestly unjust.[83] The State's evidence was largely based on the B.T's. and her brother's

---

[81]TEX. CONST. art. V, § 6.

[82] *Lancon*, 253 S.W.3d at 704.

[83] *See Johnson*, 23 S.W.3d at 11.

credibility. The court of appeals properly deferred to the jury's determination that their testimony was credible. Testimony that Laster tried to pull B.T. away from her brother and let go only when a car drove by was enough to support the jury's finding that Laster attempted to commit aggravated kidnapping. The court explained that the jury was free to reject Laster's theory of the State's evidence and, instead, believe the children's testimony. Because the jury in this case was the final judge of witnesses' credibility, the court of appeals was correct in upholding the jury's verdict. We find no error in the standard used by the court of appeals or its application.

## IV. Conclusion

We hold that the evidence was legally sufficient to support Laster's conviction for attempted aggravated kidnapping. We also hold that the court of appeals properly applied the law when it found that the evidence presented at trial was factually sufficient. We, therefore, affirm the court of appeals's judgment.

DATE DELIVERED: January 14, 2009
PUBLISH