**Frank Edward FANN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65785.**

Court of Criminal Appeals of Texas,
En Banc.

July 24, 1985.

Edward Gray, Dallas, for appellant.

Henry Wade, Dist. Atty., and John D. Nation, Hugh Lucas & Martin LeNoir, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION

McCORMICK, Judge.

Appellant was convicted of kidnapping and sentenced to a term of five years' confinement.

In two grounds of error, appellant argues that the evidence is insufficient to sustain a conviction for kidnapping in that

there is no evidence to show that the victim, DeRhonda Bacak, "was at any time secreted or held in a place where she was not likely to be found."

The indictment in accordance with V.T.C.A., Penal Code, Section 20.03(a), alleged that appellant did:

"intentionally and knowingly abduct another person, namely: DeRhonda Marie Bacak."

V.T.C.A., Penal Code, Section 20.01, reads in pertinent part:

"In this chapter:

"(1) 'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraint is 'without consent' if it is accomplished by:

"(A) force, intimidation, or deception; or

"(B) any means, including acquiescence of the victim, if he is a child less than 14 years of age ...

"(2) 'Abduct' means to restrain a person with intent to prevent his liberation by:

"(A) secreting or holding him in a place where he is not likely to be found; or

"(B) using or threatening to use deadly force."

The trial court charged the jury that they could convict appellant if they found that he restrained the victim "by moving her from one place to another or by confining her ... or holding her in a place where she was not likely to be found...."

■ The evidence showed that the victim of the kidnapping, a sixteen month old infant, along with her mother, was abducted sometime after 9:00 p.m. while visiting the grave of a deceased brother. They were forcibly driven away from the cemetery and around other parts of the city. The evidence reveals a constantly shifting path throughout the City of Irving. The victims were taken some distance from the area in which they might reasonably have been found and were kept isolated from anyone who might have been of assistance. They were later returned to the cemetery by appellant. Viewing the evidence in the light most favorable to the verdict, we find that this forcible removal against their will and the taking of them to some other, unknown places was sufficient for the jury to conclude that the offense was committed as charged to them in the court's instructions, and is sufficient to support their verdict.

Appellant also asserts for the first time that the indictment did not adequately give him notice of the offense charged in that it did not define "abduct". No motion to quash was filed.

■ A similar contention was made in *Pollard v. State*, 567 S.W.2d 11 (Tex.Cr. App.1978), an aggravated kidnapping case. This Court held that although the indictment did not define "abduct", it was legally sufficient to state an offense. We agree. The indictment is not fundamentally defective. See also *Sanders v. State*, 605 S.W.2d 612 (Tex.Cr.App.1980); *Ex parte Pousson*, 599 S.W.2d 820 (Tex.Cr.App. 1980).

Appellant's grounds of error are overruled and the judgment is affirmed.

MILLER, J., concurs in result.

CLINTON, J., not participating.

TEAGUE, Judge, dissenting.

The indictment in this cause alleges in pertinent part that appellant "did then and there unlawfully intentionally and knowingly abduct another person, namely, DaRhonda ..." The record reflects that at the time of the offense DaRhonda was only sixteen (16) months old and thus was unable to testify in this cause as to what happened to her on the day in question. However, we learn through Donna, her mother, what happened on the day in question.

I will briefly state the pertinent facts of the case.

On the day in question, May 5, 1979, a Saturday, at approximately 8:00 o'clock

p.m., when it was still daylight, Donna, who the record reflects was 23 years of age, accompanied by DaRhonda, drove to the Oak Grove Cemetery in Irving, which was located approximately two blocks from where she and her family lived. She went to the cemetery intending to visit the gravesite of her recently deceased son. When Donna was approximately one block from the cemetery her attention was attracted to the unknown driver of another automobile because he had a "hateful look" on his face. Donna identified appellant as being that person. Appellant, in his vehicle, then proceeded to follow Donna's vehicle into the cemetery. After parking her vehicle near her son's gravesite, Donna proceeded to get out of her vehicle, leaving DaRhonda sitting on the front seat, at which moment in time she was accosted by appellant, who, armed with a knife, (the record reflects that this was a linoleum type knife), "put his arm around her neck ... put the knife on her throat and forced her back inside of her car." Appellant then got inside of Donna's car and, with Donna and DaRhonda inside, drove it away from the cemetery. Appellant told Donna that he would not harm her if she "cooperated with him." Soon thereafter, appellant instructed Donna to take her shirt and brassiere off, which she did. Thereafter, appellant forced Donna to "take his dick out and suck it," which she did. During all of this time, appellant was holding his knife to Donna's stomach. Subsequently, appellant instructed Donna to remove her blue jeans and panties, which she did, thus leaving her in a state of total undress. Thereafter, appellant drove Donna's vehicle back to the cemetery, parked it, and then forced Donna, without DaRhonda, to accompany him to his automobile. Enroute to the car, Donna commenced fighting appellant, "because I wasn't going to leave my daughter alone." Donna was still naked at this point in time. Appellant soon subdued Donna and forced her back inside her car, after which he commenced driving her vehicle inside of the cemetery. Donna attempted at one time to escape but was unsuccessful. She managed, however, to throw the knife

that appellant had out of one of the windows to the car. Eventually, Donna managed to escape from appellant, after which she immediately drove to her residence where she informed her husband what had happened to her. The police were then notified.

Donna also testified that DaRhonda commenced crying the moment appellant first got inside of her automobile and continued to cry until Donna got back to her residence. During the time that appellant was with Donna and DaRhonda, he threatened both Donna and DaRhonda with serious bodily injury. Donna sustained abrasions on her body as a result of her altercation with appellant.

Irving police officers were notified of what had happened. They subsequently, accompanied by Donna, drove to the cemetery where they found appellant's vehicle, abandoned, parked next to a tree. This was at approximately 9:30 o'clock p.m. The police also recovered the knife that Donna said appellant had when she was first accosted. The knife was identified as being similar or the same one that Donna threw out of the window of her car. A payroll stub with appellant's brother's name on it was found inside of the abandoned vehicle.

A couple of days later, Donna, accompanied by her husband, went to the Irving Police Department, where she saw appellant and his brother standing in front of the police station.

Howard Hardigree, presently a member of the Kansas City, Missouri Police Department, but at the time of the offense was a member of the Irving Police Department, testified that he participated in the investigation of what had happened to Donna and DaRhonda. Hardigree testified that on the following Monday morning he spoke over the telephone with a person who identified himself as "Frank Fann." The caller "said that his car was in the pound, and he needed to get it out—that it had broke down, and he had left it at a cemetery." Hardigree advised the caller that it would be necessary for him to come to Hardigree's office to discuss the matter with

him. Soon after Hardigree had the telephone conversation, appellant appeared in his office. Appellant told Hardigree that he did not know anything about what had happened to Donna and DaRhonda. He also told Hardigree that on the Saturday evening in question "he had been on his way home, driving his car. It began having trouble, so he pulled it off the road and left it there, because he couldn't get it to start." Eventually appellant's photograph was taken by the police, after which he was permitted to leave the station-house, "pending the investigation hearing." After Hardigree was informed that Donna had identified appellant outside of the police station, see *ante*, Hardigree then went and arrested appellant and placed him in the Irving City Jail.

Hardigree also testified that in his opinion the linoleum knife was a deadly weapon.

Under the above facts, the State sustained its burden of proof that appellant restrained DaRhonda. However, did they also prove beyond a reasonable doubt that appellant secreted or held DaRhonda in a place where she was not likely to be found? The jury was instructed in the application paragraph of the trial court's charge that it had to make this finding before it could find appellant guilty of kidnapping DaRhonda.

The State appears to argue in its brief that either the automobile driven by Donna or the cemetery were "places" where DaRhonda was not likely to be found.

In *Sanders v. State*, 605 S.W.2d 612 (Tex.Cr.App.1980), a majority of a panel of this Court held that under the facts of that case an automobile could be "a place" where a person might not be likely to be found. There, the facts reflected that the defendant, without consent, took the three year old victim's parent's automobile, in which the victim was sitting on the front seat. In approximately one hour, police officers, who had been alerted about the taking of the automobile with the child victim inside of it, stopped the vehicle, whose driver was the defendant. At that time, the defendant had the victim in a sexual position. The majority of the panel rejected the defendant's contention that the evidence was insufficient to show that the victim was in a place, the automobile, where he was not likely to be found. However, in a vigorous dissenting opinion, Judge Odom stated the following: "The fact that the child was not found for approximately one hour will not support the inference that the child was not likely to be found." (615).

I find Judge Odom's conclusory remarks persuasive. *Sanders v. State*, supra, should be overruled to the extent that it holds that the mere placing of a person in a known automobile and keeping that person in the automobile for approximately one hour is sufficient to make the automobile "a place" where the victim is not likely to be found.

However, this is not to state that an automobile can never be a place where a person might not be likely to be found. Whether an automobile might likely be "a place" where the victim is not likely to be found must be determined on a case by case basis.

In our case, DaRhonda was never "lost," thus it was never necessary for anyone to look for her. At all times, except for a brief period of time, she was always in the presence of her mother. Furthermore, DaRhonda was at all times inside of her mother's automobile, in which her mother was situated most of the time. I would hold that under the facts of this case the automobile was not "a place" where DaRhonda was not likely to be found.

I also find that the cemetery was not a place where DaRhonda was not likely to be found, although under a different set of circumstances I could agree that placing or holding a person in a cemetery might be a place where one would not likely be found within a reasonable period of time. In this instance, I cannot agree that this cemetery was a place where a person would not likely to be found. The facts reflect that DaRhonda's own mother drove herself and DaRhonda to the cemetery. I

do not believe it is reasonable or likely that a parent, accompanied by an sixteen month old child, would go to a place in an automobile where neither she nor her infant child were not likely to be found in the event something prevented them from leaving the cemetery, such as the automobile becoming disabled. Furthermore, in this instance, although Donna's husband was not informed by Donna that she intended to go to the cemetery either enroute to the grocery store or enroute home from the grocery store, nevertheless, he was aware of the fact that Donna went to the cemetery two or three times each week to visit the gravesite of their son. When Donna and DaRhonda did not return within a reasonable period of time after leaving their residence, her husband testified that he became concerned about Donna and DaRhonda's whereabouts: "I thought about going looking for her, because she had been gone longer than normal." From these facts, I am able to infer that had Donna's husband then gone to look for Donna and DaRhonda, he would have probably first gone to the grocery store and, not finding them at that location, would have then gone to the cemetery. Thus, under the facts and circumstances of this case, it would be unreasonable to state that the cemetery was a place where DaRhonda was nòt likely to be found. A person cannot very well be at a place where he is not likely to be found when at the same time that place is where he is likely to be found within a reasonable period of time after it was determined that the person was missing. I would hold in this instance that the cemetery was not "a place" where the kidnapping victim was not likely to be found.

I pause to point out that the indictment merely alleged that appellant "abducted" DaRhonda. Appellant did not seek by way of a motion to quash more specific allegations. The trial judge, however, in his instructions to the jury, did not see fit to instruct the jury that one of the ways that a person might be abducted is by the use or threatened use of *deadly force*. I believe under the circumstances of this case that it would have been proper for the trial judge to have instructed the jury in the alternative that the jury could have found appellant guilty of the offense of kidnapping DaRhonda had they been instructed and found that he used or threatened to use deadly force. However, the jury was only charged that they could find appellant guilty of kidnapping DaRhonda if they found that appellant had secreted or held her in a place where she was not likely to be found. The evidence does not support such a finding by the jury.

Judge McCormick, the author of the majority opinion, states that DaRhonda and her mother "were kept isolated from anyone who might have been of assistance." Other than in the automobile and the cemetery, I must ask: Where did this isolation occur or take place? Judge McCormick also states that they were taken to some other, unknown places. I must ask: Where or what are these unknown places?

The evidence simply does not sustain the jury's verdict. Therefore, I would reverse. To the majority's contrary holding, I respectfully dissent.