In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00752-CR

____________


RODRIGO FERNANDO MONTANO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court 

Harris County, Texas

Trial Court Cause No. 1122228 






MEMORANDUM OPINION

 A jury convicted appellant, Rodrigo Fernando Montano, of aggravated
kidnapping and assessed his punishment at 35 years' confinement. In three issues
on appeal, appellant contends that the evidence supporting his conviction is legally
and factually insufficient, and that he was egregiously harmed by the trial court's
failure to give a reasonable doubt instruction on extraneous offenses presented to
the jury at the punishment phase of trial. We affirm.

BACKGROUND

 On the afternoon of June 20, 2007, appellant drove to the apartment of his
girlfriend, Elexia Dacosta, in the North Shore area of Houston. Appellant knocked
on the door of the apartment, but turned around and walked back towards his car
when Dacosta opened the door. Dacosta followed him to his car, asked him what
was wrong, and eventually ended up seated in the passenger seat as he drove away
from the apartment.

 While driving, appellant asked Dacosta multiple times if there was anything
she had to say to him and whether she was cheating on him. Dacosta attempted to
get out of the car at a stop sign, but appellant grabbed her by the hair and pulled
her back into the car. Appellant then slammed her head against the seat belt and
told her, "Bitch, I will kill you. Don't you f------ get out this car." Appellant
repeatedly slapped Dacosta and punched her face and eye. She attempted to leave
the car about five times, but appellant jerked her back into the car each time. 

 Dacosta had hidden her cell phone by her leg however, and managed to
contact her mother and a business acquaintance during the ordeal. The
acquaintance testified that he heard screaming and also heard appellant asking
Dacosta whether she cheated on him. Dacosta's mother testified that she heard
Dacosta begging appellant not to hit her and heard appellant say, "I am going to f--- your face up." 

 Dacosta was eventually able to escape from appellant and run to a nearby
shopping center, where she entered a real estate office and hid until her mother,
EMS, and police showed up. The first officer on the scene testified that Dacosta's
injuries were consistent with her story. The entire car ride lasted approximately
twelve minutes and took place in a well-populated area. 

SUFFICIENCY OF THE EVIDENCE

 In his first two issues, appellant contends that the evidence is legally and
factually insufficient to support his conviction for aggravated kidnapping.

Legal Sufficiency

In his first issue, appellant challenges the legal sufficiency of the evidence. 
In reviewing this challenge, we must view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795,
798 (Tex. Crim. App. 2005).

In reviewing for legal sufficiency, we do not resolve any conflict of fact,
weigh any evidence, or evaluate the credibility of any witnesses, as this is the
function of the trier of fact.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit findings of
the trier of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  See Adelman, 828 S.W.2d at 422. In conducting our
review, we resolve any inconsistencies in the evidence in favor of the verdict.  See
Matson, 819 S.W.2d at 843. Because the jury is in the best position to determine
reliability of available testimony and evidence, we must defer to assessments by
the jury that depend on credibility determinations. See Cain v. State, 958 S.W.2d
404, 408-09 (Tex. Crim. App. 1997).

Under the law applicable to this case, a person commits the offense of
aggravated kidnapping if he knowingly or intentionally abducts another person
with the intent to inflict bodily injury on her or terrrorize her. See Tex. Penal
Code Ann. § 20.04(a)(4-5) (Vernon 2003). Abduct means to restrain a person
with intent to prevent her liberation by: (1) secreting or holding her in a place
where she is not likely to be found, or (2) using or threatening to use deadly force. 
See Tex. Penal Code Ann. § 20.01(2) (Vernon 2003). Appellant was convicted
of abducting Dacosta by secreting or holding her in a place where she was not
likely to be found. Appellant challenges the sufficiency of the evidence to
establish his intent to prevent Dacosta's liberation by secreting or holding her in a
place where she was not likely to be found. 

The requirement of secreting the victim or holding her in a place where she
is not likely to be found is a part of the mens rea of the kidnapping offense, not the
actus reus. Megas v. State, 68 S.W.3d 234, 240 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd) (citing Brimage v. State, 939 S.W.2d 466, 475-76 (Tex. Crim.
App. 1994)). Thus, once restraint has been established, the offense of kidnapping
is established by evidence of the actor's specific intent to prevent liberation. Id. 

Regarding the first element of restraint, Dacosta testified that appellant
physically restrained her and threatened to kill her if she attempted to get out of the
car. Viewed in a light most favorable to the verdict, this testimony alone would
permit any rational jury to find beyond a reasonable doubt that appellant restrained
Dacosta and intended to prevent her liberation. 

Second, evidence that the defendant forced a victim into a car and moved the
victim from one place to another is sufficient to establish that the defendant
secreted the victim, or held her in a place where she would not likely be found. 
See Megas, 68 S.W.3d at 240 (citing Fann v. State, 696 S.W.2d 575, 576 (Tex.
Crim. App. 1985); Sanders v. State, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980)). 
That the defendant is operating a motor vehicle in public does not negate intent to
secrete or keep the victim from being found. See Megas, 68 S.W.3d at 240. When
viewed in a light most favorable to the verdict, evidence that appellant forced
Dacosta back into the car when she attempted to escape and then moved her from
one place to another is legally sufficient to support a finding by a rational trier of
fact beyond a reasonable doubt that appellant abducted Dacosta.

Accordingly, we overrule appellant's first issue.

Factual Sufficiency

 In his second issue, appellant contends that the evidence was factually
insufficient to support his conviction for aggravated kidnapping. When conducting
a factual-sufficiency review, we view all of the evidence in a neutral light.  See
Cain, 958 S.W.2d at 408. We will set the verdict aside only if (1) the evidence is
so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is
against the great weight and preponderance of the evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot
say that a conviction is "clearly wrong" or "manifestly unjust" simply because, on
the quantum of evidence admitted, we would have voted to acquit had we been on
the jury.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under
the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict.  Id.  Before finding that the evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury's verdict.  Id.  

 The fact-finder alone determines what weight to place on conflicting
testimony because that determination depends on the fact-finder's evaluation of
witnesses' credibility and demeanor. Cain, 958 S.W.2d at 408-09.  As the sole
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented.  See id. at 407n.5. In conducting a
factual-sufficiency review, we must also discuss the evidence that the appellant
contends most undermines the jury's verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). 

 Appellant argues that the evidence against him is factually insufficient to
support his conviction because Dacosta was his adult girlfriend who voluntarily got
into appellant's car and was driven for a short period of time in her own densely
populated neighborhood.

 That Dacosta may have initially joined appellant voluntarily in his car does
not preclude a conviction for the offense of kidnapping. See Megas, 68 S.W.3d at
241 (citing Boyle v. State, 820 S.W.2d 122, 138 (Tex. Crim. App. 1989)). 
Likewise, appellant's dating Dacosta does not preclude the jury's finding that he
abducted her when she wanted to leave. Id. Moreover, that the abduction took
place in public does not preclude a jury from concluding appellant intended to
secrete or hold Dacosta in a place where she was not likely to be found. Id. 

 After viewing all of the evidence in a neutral light, there is no objective basis
in the record from which we may conclude that the evidence supporting the jury's
finding that appellant intended to secrete or hold Dacosta in a place where she was
not likely to be found was so weak as to render the jury's verdict clearly wrong and
manifestly unjust or that it was against the great weight and preponderance of the
evidence. See Johnson, 23 S.W.3d at 11. We therefore hold that the evidence is
factually sufficient to support appellant's conviction.

 Accordingly, we overrule appellant's second issue.

JURY CHARGE INSTRUCTION FOR EXTRANEOUS OFFENSES

 In his third issue, appellant contends the trial court erred by failing to sua
sponte instruct the jury on the proper burden of proof for extraneous offenses
during the punishment phase of trial. See Huizar v. State, 12 S.W.3d 479, 484
(Tex. Crim. App. 2000); Bolden v. State, 73 S.W.3d 428, 431 (Tex.
App.--Houston [1st Dist.] 2002, pet. ref'd). Specifically, appellant claims that the
jury should have been instructed not to consider extraneous offense evidence when
assessing punishment unless they believe beyond a reasonable doubt that the
defendant committed them. See Tex. Code Crim. Proc. Ann. art. 37.07 § 3(A)
(Vernon Supp. 2008); George v. State, 890 S.W.2d 73, 75 (Tex. Crim. App. 1994). 

 A trial court must submit a charge setting forth the "law applicable to the
case." Bolden, 73 S.W.3d at 431; Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon
Supp. 2008). The Court of Criminal Appeals has held that a reasonable doubt
instruction regarding extraneous offenses is "law applicable to the case," and the
trial court must include such an instruction even if it is not requested. Huizar, 12
S.W.3d at 483-84; Bolden, 73 S.W.3d at 431. 

 Here, Dacosta and two of appellant's previous girlfriends, Breigh Jiles and
Teairra Stephens, testified during the punishment phase of the trial to extraneous
bad acts committed by appellant. Dacosta testified to multiple extraneous bad acts
committed by appellant during the course of the trial. Jiles testified to two
previous occasions in which appellant assaulted her. Stephens testified that
appellant assaulted her 5-10 times, providing descriptive accounts of five incidents.

 Because the testimony elicited by the State discussed multiple,
unadjudicated bad acts, the trial court erred by not including the reasonable-doubt
instruction in the charge. See Huizar, 12 S.W.3d at 483-84; Bolden, 73 S.W.3d at
431. Thus, we must decide whether the error implicated constitutional rights. See
Huizar, 12 S.W.3d at 484; Bolden, 73 S.W.3d at 431. The failure to include the
instruction is not automatic reversible error, and because he did not object to the
jury charge, appellant must show the omission caused him egregious harm under
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Bolden, 73
S.W.3d at 431. For a reversal based on egregious harm, the error must have
created such harm that the appellant did not receive a fair and impartial trial. 
Almanza, 686 S.W.2d at 171. 

 In making this determination, we must assay the actual degree of harm in
light of (1) the entire jury charge, (2) the state of the evidence, including the
contested issues and weight of probative evidence, (3) the argument of counsel,
and (4) any other relevant information revealed by the record of the trial as a
whole. Almanza, 686 S.W.2d at 171; Bolden, 73 S.W.3d at 431. The purpose of
this review is to illuminate the actual, not just theoretical, harm to the defendant. 
Almanza, 686 S.W.2d at 174; Bolden, 73 S.W.3d at 431.

The Jury Charge

 While the jury was never instructed that extraneous offenses must be proven
beyond a reasonable doubt to be considered, during the guilt/innocence phase of
the trial, the trial court instructed the jury: "The burden of proof in all criminal
cases rests upon the State throughout the trial and never shifts to the defendant. 
All persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proven beyond a reasonable doubt." 
Two days later, during the punishment phase, the trial court instructed the jury:
"The burden of proof in all criminal cases rests upon the State throughout the trial
and never shifts to the defendant." Thus, even though the reasonable doubt
instruction was not in the charge, the jury was made aware that, even at the
punishment phase, the burden of proof was on the State. (1)

The State of the Evidence

 The State presented three witnesses during the punishment phase of the trial. 
Each testified to bad acts conducted by appellant other than the aggravated
kidnapping offense for which he was being punished.

 1. Summary of the Evidence

 The State's first witness was Breigh Jiles, who testified that appellant
assaulted her twice during their relationship. Jiles testified that during the first
incident, appellant choked her while they were riding in his car and were stopped
at a red light. She testified that the second incident occurred in his bedroom when
he punched her multiple times and threw her against a wall. During her cross-examination, Jiles admitted that she failed a polygraph test pertaining to a separate
incident in which appellant claimed Jiles pulled a gun on him in a parking lot. 

 The State's second witness was Teairra Stephens, who testified that
appellant assaulted her about 5-10 times during their relationship. Stephens 
described five of the incidents. First, Stephens claimed that appellant choked her
with a cord, threatened her with a knife, and later forced her into his car at Wal-Mart and drove away with her. As evidence, the State presented the Wal-Mart
security camera tape. As a result of the Wal-Mart incident, appellant was
convicted of assaulting Stephens and sentenced to 250 days' confinement. The
judgment from that conviction was introduced at the punishment phase of trial. 
Second, Stephens claimed that on another occasion appellant hit her and attempted
to burn her with a cigarette lighter while they were in his car. Third, Stephens
claimed that once, during an argument, appellant stuck the barrel of a gun in her
mouth. Fourth, Stephens testified that appellant dragged her down some stairs in
her apartment complex and twisted her arm. Lastly, Stephens testified that while
she and appellant were riding in a car, appellant punched her multiple times and
split her lip. The State produced medical records and a protective order as
evidence to support Stephens' testimony 

 The State's last witness was Dacosta, who testified to two extraneous bad
acts by appellant during trial. Dacosta claimed that appellant told a convicted
murderer and rapist to write her a letter. According to Dacosta, the letter stated
that the writer was a convicted murderer and rapist and informed Dacosta that she
should go see appellant in jail. Dacosta also claimed that appellant phoned her
multiple times after the incident and that appellant's brother gave her an evil-looking smile.

 Appellant's first three witnesses were his mother, ex-wife, and brother. 
Appellant's mother testified that she did not see any of the confrontations
presented by the State. Appellant's ex-wife testified that appellant never assaulted
her. Appellant's brother testified to the details of a fight that apparently took place
between Stephens and appellant a year after the incidents testified to by Stephens. 

 Lastly, appellant testified on his own behalf. Appellant stated that he never
assaulted Jiles and that she was lying because he left her at the altar when they
were supposed to get married. Appellant admitted that he assaulted Stephens on at
least three occasions, but denied attempting to burn her with a cigarette lighter as
she had described in one of the assaults. The only incident for which appellant
presented a separate version of facts was the first incident described above ending
at Wal-Mart, for which he was actually convicted of assault. Appellant admitted in
trial that he assaulted Stephens that day, just not in the manner that she described. 
Appellant also admitted that he has anger problems and "past problems with the
law and with hitting women."

 2. Analysis of the Evidence

 While appellant denied the two assaults described by Jiles, he presented no
contradicting evidence other than his own testimony that he never assaulted her. 
Appellant presented no evidence or testimony to describe his version of the events
other than his claim that Jiles is a liar. On appeal, appellant points to the fact that
Jiles admitted to failing a polygraph test; however, Jiles testified that the polygraph
test concerned an offense that is not related to the two previous assaults presented
by the State. Appellant's flat denial was the only controverting evidence presented
to the jury concerning appellant's extraneous assaults against Jiles. His denial,
however, is weakened due to the fact that appellant admitted to a pattern of abusing
women and the fact that appellant's own testimony throughout the trial was
inconsistent and rejected by the jury at the guilt/innocence phase.

 The bulk of the extraneous offenses complained about on appeal were
testified to by Stephens. Of the five extraneous assaults Stephens described,
appellant only denied one of the unajudicated assaults and presented a separate
version of events for another assault that he both acknowledged took place and of
which he was eventually convicted. Appellant did not deny the remaining
extraneous assaults to which Stephens testified. While the existence of one
unajudicated extraneous assault was called into question, the fact remains that
appellant either admitted to or was convicted of four previous assaults against
Stephens.

 Appellant also points to Dacosta's testimony to prove harm. However,
Dacosta simply testified to her fear at receiving a letter from a murderer and rapist,
phone calls from appellant, and evil smiles from appellant's brother. None of these
clearly show an offense on behalf of the appellant and are therefore not harmful. 
Even if they do show an offense, they are not relevant to appellant's problem
abusing women, and the exclusion of a reasonable-doubt instruction related to
these offenses did not harm appellant.

The Argument of Counsel

 Both the State's and appellant's counsel referred to appellant's extraneous
offenses in their closing arguments to the jury. The State used the extraneous
offenses to create a pattern of abuse and to show appellant's "true character." It
asked for "a lot of time," not less than ten years, in order to "protect the next
victim." Neither the State nor appellant informed the jury that the extraneous
offenses must be proven beyond a reasonable doubt. Appellant's counsel argued
that appellant was a good person making bad decisions. Appellant's counsel even
acknowledged "all of these young ladies [appellant] abused." He pointed out that
Jiles failed a lie detector test, but did not specifically mention the two incidents to
which Jiles testified. He also acknowledged that Stephens "did incur some
physical abuse" from appellant, but stated that Stephens also "did some things,
herself." 

 It is important that the jury was told by the State that the extraneous offenses
were presented for the purpose of showing them that appellant has a pattern of
abusing his girlfriends. Appellant admitted this pattern of abuse and clearly stated
that he assaulted Stephens multiple times. Appellant's own attorney referred to the
State's witnesses in his argument as "these young ladies [appellant] abused." 
Because the purpose of presenting the seven extraneous assaults was to
demonstrate a pattern of abuse--a pattern to which appellant and his counsel
admitted--it is not significant or egregiously harmful that the jury was not told that
extraneous offenses had to be proven beyond a reasonable doubt.

Other Relevant Information

 We further point out for the analysis of egregious harm that none of the
extraneous offenses caused the severity of injuries as the offense for which
appellant was convicted. Also, appellant's middle range 35-year sentence is not
significant to weigh for or against harm because the available punishment range
was between 5 and 99 years. See Tex. Penal Code Ann. §§ 12.32, 20.04 (Vernon
2003); Graves v. State, 176 S.W.3d 422, 435-36 (Tex. App.--Houston [1st Dist.]
2004, pet. struck).

 Based on our review of the Almanza factors, we do not find that the failure
to instruct the jury that the extraneous offenses must be proven beyond a
reasonable doubt resulted in an unfair and impartial trial. Thus, the appellant was
not egregiously harmed. 



 Accordingly, we overrule appellant's third issue.

CONCLUSION



 We affirm the judgment of the trial court.







 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Sharp and Taft. (2)


Do not publish. Tex. R. App. P. 47.2(b).

1. We note that appellant requested and received a jury charge issue on "sudden
passion" at the punishment phase of the trial. The burden of proof was on the
defendant to prove this special issue by a preponderance of the evidence. See
Hernandez v. State, 217 S.W.3d 206, 210-11 (Tex. App.--Houston [1st Dist.] 2003,
pet. ref'd). Thus, the jury charge stated that, as to this special issue, appellant had the
burden of proof.
2. The Honorable Tim Taft, retired justice, Court of Appeals for the First District
of Texas, participating by assignment.