

NUMBER 13-16-00469-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROBERT GARCIA,**                                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Longoria and Hinojosa
### Memorandum Opinion by Justice Longoria

Appellant Robert Garcia was convicted of one count of continuous family violence, one count of assault by choking, and two counts of aggravated kidnapping. *See* TEX. PENAL CODE §§ 20.04, 22.01, 25.11 (West, Westlaw through 2017 1st C.S.). Garcia argues on appeal that: (1) the trial court erred by allowing irrelevant testimony; (2) the trial court erred by denying instructions on lesser-included offenses; and (3) his sentence constituted a double-jeopardy violation. We affirm.

## I. BACKGROUND

Around 3:00 a.m. on July 10, 2015, Garcia drove to the apartment of his ex-girlfriend, Dali Chapa. Garcia learned from Chapa's roommate, Ashly Gutierrez, that Chapa was in her room with several of her friends. According to Chapa, she had just arrived home from a sports bar about thirty minutes prior to Garcia arriving; at that time, she felt nauseated and began vomiting in her bathroom. Gutierrez testified that upon seeing two men in her apartment and discovering that her bathroom was locked, Garcia kicked down the door. Gutierrez testified that she heard slapping, yelling, and something hitting the wall. Chapa testified that Garcia grabbed her by the hair and repeatedly slapped her and screamed in her face. He then proclaimed, "we're leaving," to which Chapa replied, "no, I'm not going to leave. I don't want to leave." Chapa claims that Garcia forcefully escorted her out of the apartment by the back of her neck, and then, with two hands on her hair, proceeded to pull her down six flights of stairs. One of Chapa's friends at the apartment attempted to intervene, but Garcia punched her. Chapa resisted at the bottom of the stairs but Garcia kicked her repeatedly until she entered the backseat of his Cadillac. Garcia engaged the vehicle's child locks so that Chapa couldn't leave. There were two other passengers inside the vehicle. Chapa claims that Garcia hit her inside the vehicle and then drove to a Red Roof Inn. The other two passengers left shortly after arriving at the Red Roof Inn. Even though they did not check in, Garcia slapped Chapa some more in the bathroom at the Red Roof Inn and then told her to get back to the vehicle. Chapa tried to escape from the vehicle but was unable to do so. She testified "[h]e tries to reach – like acts like he's going to reach under the seat to grab something. He's like threatening that nobody will find me and like all different kind of stuff, just telling me ugly stuff." Chapa eventually fell asleep; Garcia parked the car at a Stripes gas station

2

and also feel asleep. When she awoke, Chapa felt disoriented and asked Garcia to take her home, which he did. Chapa testified that she waited two days to seek medical treatment because she was afraid.

After the July 10 incident, Chapa decided to move to a new apartment complex. However, she maintained an open line of communication with Garcia. At 11:00 a.m. on August 4, 2015, Chapa reached out to Garcia and asked him to drive her from the Holiday Inn to her new apartment. When he arrived to pick her up, Chapa realized that Sara Lopez was driving the car. Chapa and Garcia bickered about Lopez's presence throughout the drive to the new apartment. Garcia exited the vehicle to continue to confront Chapa. Chapa exclaimed, "Fine. I'm done. . . . No more," to which Garcia replied, "No. . . . You're not going to leave me." He then pulled her hair until she complied and re-entered the vehicle. Chapa sat in between a child seat and Garcia in the back of the car. Garcia instructed Lopez to drive to a hotel because "I'm going to tie this b**** up." Garcia then punched Chapa with a closed fist, kneed her in the mouth, and began choking Chapa as he exclaimed, "I don't give a f***, b****. Die. Choke on it. Die."

Once they arrived at a hotel, Garcia instructed Lopez to reserve a room. When she explained that she didn't have an ID, Garcia took Chapa's ID from her purse and gave it to Lopez. As Chapa and Garcia waited in the car while Lopez reserved a room, Garcia quelled her screaming by covering her mouth and telling her to "Shut the f*** up." Lopez returned after a while and informed Garcia that a room would not be available until 3:00 p.m., at which point Garcia directed her to "drive around town until then." Garcia began rummaging through Chapa's cell phone. As Lopez continued to drive, Chapa noticed a police vehicle up ahead. She opened the car door, leaned out of the child car seat, and attempted to wave at the police officer's for assistance. Chapa claims that

3

Garcia reached towards her saying, "no, don't do it." She does not remember if he pushed her, but Chapa fell out of the vehicle and landed on her head. She received emergency treatment at the scene.

Garcia faced a four-count indictment in a jury trial that began on June 14, 2016. Each count also included enhancement paragraphs alleging habitual felony offender status. On June 16, the jury convicted Garcia of all four counts as alleged in the indictment. The jury assessed punishment at thirty years for each count, to run concurrently, in the Institutional Division of the Texas Department of Criminal justice. This appeal ensued.

## II. LOPEZ'S TESTIMONY

In his first issue, Garcia argues it was an error to admit Sara Lopez's testimony. The State responds by arguing that Garcia's first point is multifarious; in the alternative, the State contends there is no reversible error because Lopez's testimony was relevant and any potential error was harmless.

The State originally intended to call Lopez as a witness, but the trial court appointed an attorney to advise her based on her apparent participation in some of the criminal acts alleged against Garcia. Outside the presence of the jury, Lopez decided not to testify and invoked her Fifth Amendment right against self-incrimination. However, the trial court gave the State the option of calling Lopez to the stand anyway to exercise her Fifth Amendment right in front of the jury. After she invoked her Fifth Amendment right, the following exchange occurred:

> State: I'm going to ask you one question not relevant to any of the incidences.
>
> Defense: Judge, I'm going to object to relevance. He himself is saying it's not relevant.

4

Court:      Let me hear the question.

State:      It goes to state of mind, Judge.

Court:      All right.  Go ahead.  I need to hear the question first.

State:      Are you scared of the defendant?

Defense:    Judge, I'm going to object to relevance.

Court:      Overruled.

State:      You can answer.

Lopez:      Yes.

## A. Standard of Review and Applicable Law

A trial court's ruling regarding the admissibility of evidence is reviewed for abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).  As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld.  *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).  The Rules of Evidence define relevant evidence as any evidence that has a tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action.  TEX. R. EVID. 401.  Upon finding a non-constitutional error, the reviewing court will reverse only upon a finding that the error affected the accused's substantial rights.  *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011).  Substantial rights are not affected if, based on the record as a whole, this Court has a fair assurance that the erroneous admission of evidence had either no influence or only a slight influence on the jury.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In making this assessment, this Court considers everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record.  *Id.*  The presence

5

of overwhelming evidence supporting the conviction can be a factor in the evaluation of harmless error.  *See id.* at 356.

**B. Discussion**

It is true that we may disregard a multifarious point, but we also have the option to review such multifarious issues if we are able to "able to determine, with reasonable certainty, the alleged error about which the complaint is made." *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  Thus, we will analyze whether it was an error to admit Lopez's testimony.

Garcia contends that the law has long prohibited allowing witnesses to exercise their Fifth Amendment rights in front of the jury.[1]  *See U.S. v. Ritz*, 548 F.2d 510, 521 (5th Cir. 1977); *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986).  Additionally, Garcia argues that Lopez's testimony that she is afraid of him has no relevance to any of the four indicted offenses, especially because she refused to be cross-examined about her fear.  The State argues that Lopez's testimony about being afraid of Garcia was relevant to her state of mind.  However, state of mind testimony is a hearsay exception, and Garcia did not raise any hearsay objections.  *See* TEX. R. EVID. 803(3).  The State additionally argues that Lopez's fear testimony is relevant "contextual evidence" regarding a chain of questions Garcia's counsel directed at Chapa.  These questions, argues the State, left the false impression that Lopez was just as guilty as Garcia and that she should be charged alongside him.  However, Lopez's complacency in driving around is not a fact of consequence in this case.  *See* TEX. R. EVID. 401.  Furthermore, we note that most of the cases in which testimony concerning a witness being afraid of the defendant is found

---

[1] Even though Garcia concedes that he did not object to Lopez's testimony on Fifth Amendment grounds before the trial court and thus failed to preserve error, Garcia argues that this is still relevant to the discussion of the harm caused by erroneously admitting her irrelevant testimony.  As noted above, Garcia did raise a relevancy objection to the trial court.

to be relevant involve murder. *See Garcia v. State*, 246 S.W.3d 121, 132 (Tex. App.—San Antonio 2007, pet. ref'd); *Amunson v. State*, 928 S.W.2d 601, 605 (Tex. App.—San Antonio 1996, pet. ref'd); *Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996) (en banc). We conclude that the trial court abused its discretion in allowing Lopez's testimony. *Cameron*, 241 S.W.3d at 19.

However, even though it was an error to allow Lopez's testimony, we conclude that any such error was harmless upon considering everything in the record and how Lopez's testimony related to other evidence and the presence of other overwhelming evidence. *See Motilla*, 78 S.W.3d at 356. There was overwhelming testimony from Chapa and Gutierrez to support the convictions. Garcia does not deny the events themselves; instead, as we discuss further below, his main argument is that he was entitled to an instruction on lesser-included offenses. In addition, Lopez's testimony was never mentioned again during the trial and the State even minimized her testimony during the closing argument: "She invoked her Fifth Amendment right not to incriminate herself. And then she said she was scared of the defendant. And then invoked her right to remain silent at that point on. So you didn't hear much from her. That's all you heard, really, from Mrs. Lopez." Even though the State referenced the only testimony that Lopez gave, which is that she's scared of Garcia, the State downplayed the importance of her remarks and glossed over Lopez's comments without pulling any further attention to them. In the end, even if her testimony had been excluded, there was an overwhelming amount of support for his conviction.[2] Thus, even though it was an error to allow Lopez to testify, any resulting error was harmless. *See Cameron*, 241 S.W.3d at 19.

---

[2] We find the admission of Lopez's testimony harmless, even considering any potential error of allowing Lopez to exercise her Fifth Amendment rights in front of the jury. There was so much evidence to support Garcia's conviction that we have a fair assurance that any error either had no effect or only a slight influence on the jury. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In his second issue, Garcia argues that the trial court erred by denying his request for jury instructions on the lesser-included offenses of unlawful restraint and kidnapping for counts three and four.[3]

## A. Standard of Review and Applicable Law

A trial court may instruct the jury on a lesser-included offense if (1) the offense in question is a lesser-included offense under article 37.09 of the Texas Code of Criminal Procedure and (2) there is some evidence that would permit a rational jury to find that the defendant is not guilty of the greater offense but is guilty of the lesser-included offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to the lesser included offense for the fact finder to consider before an instruction on a lesser included is warranted. *Harner v. State*, 997 S.W.2d 695, 702 (Tex. App.—Texarkana 1999, no pet.). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007).

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX. PENAL CODE ANN. § 20.03(a) (West, Westlaw through 2017 1st C.S.). A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on him or terrorize him. *Id.* § 20.04(a)(4), (5). Restrain means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person

---

[3] Chronology notwithstanding, count three from below was for aggravated kidnapping related to the August 4 incident and count four was for aggravated kidnapping related to the July 10 incident.

from one place to another or by confining the person. *Id.* § 20.01(1)(A) (West, Westlaw through 2017 1st C.S.). Restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A). Abduct means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found. *Id.* § 20.01(2)(A). A person commits the offense of unlawful restraint if he intentionally or knowingly restrains another person. *Id.* § 20.02(a) (West, Westlaw through 2017 1st C.S.).

## B. Discussion

Garcia acknowledges that the evidence clearly supports a charge of assault and unlawful restraint, and yet he claims that "there is simply no evidence of Garcia's intent to prevent Chapa's liberation by secreting her or holding her in a place she won't be found." Instead, Garcia argues that the evidence merely shows "an angry boyfriend or ex-boyfriend who overreacted." Thus, he argues the trial court should have instructed the jury on the lesser-included offenses of assault and unlawful restraint. The State does not dispute that unlawful restraint and kidnapping are lesser-included offenses of aggravated kidnapping, but the State argues that there is no evidence that, if believed, would negate the aggravating elements that raise the lower offenses to the greater offenses. *See Rousseau*, 855 S.W.2d at 672. We agree with the State.

Concerning count four, Garcia argues there is no evidence to support aggravated kidnapping because the record does not indicate that Garcia abducted Chapa with the intent to inflict bodily injury or terrorize her. Additionally, Garcia argues the jury could interpret the evidence as mere unlawful restraint as opposed to aggravated kidnapping because Garcia drove Chapa back home when she requested. However, we find these arguments meritless.

9

The uncontroverted evidence provides that on July 10, 2015, Garcia kicked in Chapa's bathroom door and repeatedly slapped her and screamed at her. When Chapa protested to leaving, Garcia forcibly removed from the apartment, and then dragged her by the hair down six flights of stairs. Garcia repeatedly kicked Chapa until she complied and entered his vehicle. Before closing the door, Garcia engaged the child safety lock to ensure Chapa could not escape. Chapa additionally testified that Garcia threatened her by claiming that "nobody will find [her]." Thus, Garcia's intent to secrete Chapa is demonstrated by removing her from the apartment to his car, turning on the child lock, and isolating her in a motel and his car. Garcia's intent to secrete Chapa is further evidenced by his decision to drive around the city until she fell asleep. *See Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985) (holding that victims in car driven in shifting path through city streets sufficient evidence of keeping victims isolated from being found or receiving assistance).

The record sufficiently demonstrated Garcia's intent to inflict bodily injury by his actual infliction of bodily injury while he isolated Chapa: (1) in her bathroom; (2) in the car on the way to the motel; and (3) in the motel's bathroom. Similarly, Garcia's intent to terrorize her is sufficiently demonstrated by his threat that nobody would find her. Thus, nothing in the record negates the elements that raise unlawful restraint to kidnapping and kidnapping even further to aggravated kidnapping. *See Harner*, 997 S.W.2d at 702.

Concerning the incident on August 4, Garcia concedes that the testimony and injuries supporting count three are "more egregious" than count four, but nevertheless argues again that the jury could interpret the evidence as Garcia only being guilty of unlawful restraint or kidnapping as opposed to aggravated kidnapping. Garcia bases this claim on the evidence challenging Chapa's credibility, the evidence of reciprocal jealousy,

10

and the fact that Chapa was the one who initiated the contact with Garcia on August 4. However, we once again disagree with Garcia.

The record sufficiently established Garcia's intent to secrete Chapa by telling her that he would tie her up alone in a hotel and when he covered her mouth to quell her screams while telling her to "shut the f*** up." In addition, Garcia instructed Lopez to drive around town until a room at the hotel became available at 3:00 p.m. *See Fann*, 696 S.W.2d at 576; *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980) (holding that driving victim around in car on city streets for an hour sufficient evidence of secreting and holding victim in place not likely to be found); *see also SanTellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997) (en banc) ("[I]f the actor intended at any time during the restraint to secrete or hold the victim in a place where she would not likely be found, the offense is complete.").

The record also sufficiently established Garcia's intention to inflict bodily harm on Chapa and his intention to terrorize her. The uncontroverted evidence established that Garcia exclaimed to Chapa, "You're not going to leave me." Garcia then pulled on Chapa's hair until she acquiesced and entered the vehicle. Chapa testified that he commanded Lopez to drive to a hotel because "I'm going to tie this b**** up." The uncontroverted evidence further established that he punched her with a closed fist, kneed her in the mouth, and choked her, saying, "I don't give a f***, b****. Die. Choke on it. Die." Once again, Garcia's intent to inflict bodily injury is demonstrated by his actual infliction of bodily injury numerous times throughout this incident. And he clearly intended to terrorize her by stating that he intended to tie her up in a hotel. Thus, there is no evidence to negate the elements that raise unlawful restraint to the greater offense of kidnapping; likewise, there is nothing to refute the theory that raises kidnapping to the

11

greater offense of aggravated kidnapping. *See Harner*, 997 S.W.2d at 702. We overrule Garcia's second issue.

### IV. DOUBLE-JEOPARDY

In count one, Garcia was convicted of continuous violence against the family, with multiple violations having allegedly occurred on July 10, 2015 and August 4, 2015. In counts three and four, Garcia was convicted of aggravated kidnapping, having occurred on the same dates, respectively. Thus, Garcia argues that his convictions violated double-jeopardy because he was prosecuted twice for the same conduct: on both July 10, 2015 and August 4, 2015, a string of events led to being convicted under two different penal sections.

### A. Standard of Review and Applicable Law

Generally, a double-jeopardy claim must be raised in the trial court to preserve the error for appellate review. *Gonzalez v. State*, 8 S.W.3d 640, 643–46 (Tex. Crim. App. 2000). An exception to this general rule applies if (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record and (2) the enforcement of the usual rules of procedural default serves no legitimate state purpose. *Id.* A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence to support the claim. *Ex parte Knipp*, 236 S.W.3d 214, 216, n. 3 (Tex. Crim. App. 2007).

The Double-Jeopardy Clause of the United States Constitution provides no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST., amend. V. Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after

12

conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). "When the same act or transaction violates two different penal statutes, the two offenses are the same for double-jeopardy purposes if one of the offenses contains all the elements of the other; they are not the same if each offense has a unique element." *Duvall v. State*, 59 S.W.3d 773, 777 (Tex. App.—Austin 2001, pet. ref'd) (*citing Blockburger v. U.S.*, 284 U.S. 299, 304 (1932)).

## B. Discussion

Garcia did not preserve his double-jeopardy issue to the trial court, meaning that he can only prevail on this issue if a double-jeopardy error is apparent on the face of the record. *See Gonzalez*, 8 S.W.3d at 643. However, aggravated kidnapping and continuous family violence each have unique elements: aggravated kidnapping requires the State to prove that Garcia abducted Chapa with the intent to inflict bodily injury or terrorize her whereas continuous family violence requires the State to prove that Garcia intentionally, knowingly, or recklessly caused bodily injury by kicking or hitting her. *See Duvall*, 59 S.W.3d at 777; TEX. PENAL CODE § 20.04(a)(4), (5); *cf. Stephenson v. State*, 255 S.W.3d 652, 657 (Tex. App.—Forth Worth 2008, no pet.) (finding no double-jeopardy violation when defendant was convicted of both aggravated kidnapping and aggravated assault). Additionally, Garcia's two counts of aggravated kidnapping each presented alternative means to satisfy the aggravating element: either with his intent to inflict bodily harm upon Chapa or with his intent to terrorize her. *See* TEX. PENAL CODE ANN. § 20.04(a)(4), (5); *see also Benefield v. State*, No. 02-14-00099-CR, 2015 WL 4606273, at *2 (Tex. App.—Fort Worth July 30, 2015, pet. ref'd) (mem. op., not designated for publication) (op. on reh'g) (holding double-jeopardy claim not clear on the face of the

record because the jury returned a general verdict and the jury charge allowed a guilty verdict under an alternative and non-conflicting theory). Therefore, Garcia's double-jeopardy claim is not clear from the face of the record. We overrule Garcia's third issue.

### V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of April, 2018.