

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00456-CR

Bobby **MORENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-6663
Honorable Ron Rangel, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  August 21, 2013

AFFIRMED

Bobby Moreno appeals his convictions for human trafficking, aggravated kidnapping, aggravated sexual assault of a child, and compelling prostitution.  On appeal, he argues that (1) he was deprived of jury unanimity on two of the counts due to a disjunctive jury charge, (2) he received multiple punishments for the same offense, and (3) the evidence was legally insufficient to support his conviction for aggravated kidnapping.  We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Bobby Moreno was charged in a fourteen-count indictment arising out of events that occurred during the two-week disappearance of the complainant, J.C., a thirteen-year-old juvenile at the time. The State proceeded to trial on four of the 14 counts.

Count I (Human Trafficking) alleged that:

Paragraph A: On or about December 27, 2007, Bobby Moreno knowingly trafficked J.C., a person younger than 18 years old, with the intent or knowledge that J.C. would engage in forced labor or services which constitute an offense under Section 43.02, namely: Prostitution;

Paragraph B: On or about December 27, 2007, Bobby Moreno intentionally and knowingly benefitted from participating in a venture that involved knowingly trafficking J.C., a person younger than 18 years old, with the intent or knowledge that J.C. would engage in forced labor or services which constitute an offense under Section 43.02, namely: Prostitution.

Count II ("Super" Aggravated Sexual Assault of a Child)[1] alleged that:

Paragraph A: On or about December 27, 2007, Bobby Moreno intentionally and knowingly caused the penetration of the female sexual organ of J.C., a child younger than 14 years old, by his male sexual organ, and did by acts and words place J.C. in fear that serious bodily injury and death would be imminently inflicted on J.C.;

Paragraph B: On or about December 27, 2007, Bobby Moreno intentionally and knowingly caused the penetration of the female sexual organ of J.C., a child younger than 14 years old, by his male sexual organ, and did by acts and words occurring in the presence of J.C. threaten to cause the death, serious bodily injury and kidnapping of J.C.;

Paragraph C: On or about December 27, 2007, Bobby Moreno intentionally and knowingly acted in concert with Juan Moreno by holding and tying down J.C. for Juan Moreno during the course of the same criminal episode and Juan Moreno intentionally and knowingly caused the penetration of the female sexual organ of J.C., a child younger than 14 years old, by his male sexual organ.

---

[1] The Penal Code does not refer to a "super" aggravated sexual assault offense, but the parties and trial judge agreed to use the term to refer to the charged offense which contains a sentencing enhancement because the victim was less than 14 years old. *See* TEX. PENAL CODE ANN. § 22.021(f)(2) (West Supp. 2012) (providing for a minimum term of imprisonment of 25 years if the victim is younger than 14 years of age and the offense is committed in a manner described by subsection (a)(2)(A)). The judgment for Count II states that Moreno was convicted of "Super Aggravated Sexual Assault of a Child (Repeater)." For ease of reference, we will also use the term.

Count III (Aggravated Kidnapping) alleged that:

On or about December 27, 2007, Bobby Moreno intentionally and knowingly abducted J.C. by secreting and holding J.C. in a place where she was not likely to be found, with intent to violate and abuse J.C. sexually, with intent to inflict bodily injury on J.C., with intent to terrorize J.C., and with intent to facilitate the commission of a felony, to-wit: Compelling Prostitution.

Count IV (Compelling Prostitution) alleged that:

On or about December 29, 2007, Bobby Moreno knowingly caused, by any means, J.C., a person younger than 17 years old, to commit prostitution.

The evidence at trial consisted of J.C.'s testimony that when she went to Moreno's house to buy drugs, as she had in the past, she was locked in the bathroom and prevented from leaving. Moreno and his brother Juan then forcibly dragged her into a bedroom, took off her clothes, and tied her to the bed naked. Both men then had sexual intercourse with her. Later that same day, Moreno and his brother accepted money from another man in exchange for him having sexual intercourse with J.C. According to J.C., she was kept tied to the bed for a period of two weeks, during which time the Moreno brothers continued to accept money from other men and force her to engage in sexual intercourse with them. When J.C. tried to resist, Moreno and his brother injected her with drugs to prevent her from struggling. One day, at the end of the two-week period, J.C. was untied and permitted to clean up because a state official was coming to the house to meet with Juan. J.C. was allowed to walk around the house freely during that time, but when she tried to flee out the front door when the official left, Juan stopped her from leaving. Shortly thereafter, Robert Ojeda was walking by the house and saw J.C. looking out the front door. Ojeda believed that she needed help and called to her to come outside to the front gate. J.C. hesitated, but when Ojeda told her to ask Moreno if she could walk out to lock the front gate, she did so. Ojeda and J.C. ran off down the street and went to the home of Ojeda's sister. J.C. was thirteen years old at the time of these events.

In addition to the testimony of Ojeda and his sister, the State also presented the testimony of J.C.'s juvenile probation officer and mother who testified, respectively, that J.C. failed to report and was missing during the two-week period at issue. Nancy Kellogg also testified as an expert on child sexual abuse.

Moreno presented evidence that the house appeared to be abandoned and, contrary to J.C.'s testimony that lights were on inside the house, the electricity at the house had been shut off during the relevant period of time. Moreno's counsel also stressed the absence of any marks or other physical evidence of assault or sexual abuse on J.C. However, the evidence also showed that J.C. did not immediately report the incident to the police.

The jury found Moreno guilty on all four counts and found a repeater enhancement allegation true. Based on the jury's punishment recommendations, the trial court imposed sentences of life on the super aggravated sexual assault and compelling prostitution, 40 years' imprisonment on the aggravated kidnapping, and 50 years' imprisonment on the human trafficking conviction. All the sentences run concurrently. Moreno now appeals.

ANALYSIS

### *Jury Unanimity* – *Count I (Human Trafficking) & Count II ("Super" Aggravated Sexual Assault)*

Moreno asserts his due process rights were violated because the jury could have returned a less than unanimous verdict on Counts I and II due to disjunctive submissions in the jury charge under these counts. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2012). The State responds that the charge required the jury to unanimously agree on all the essential elements of the gravamen of the offenses, and that only the "manner and means" of committing the core criminal conduct was submitted disjunctively. *See Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (jury unanimity is required on the

- 4 -

essential elements, but not on the alternate means of committing the offense). We analyze an allegation of jury charge error in two steps, first determining whether error exists and then whether the degree of harm necessary for reversal occurred. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (if error was preserved, reversal is required if "some harm" exists, but if unpreserved, the error must have caused actual "egregious harm").

A jury in a criminal case must reach a unanimous verdict. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a); *Landrian v. State*, 268 S.W.3d 532, 535-36 (Tex. Crim. App. 2008) (both Texas and federal courts have held that the jury must be unanimous in finding that the defendant committed a specific statutory crime). The jury must agree that the defendant committed "the same, single, specific criminal act," but need not unanimously find that the defendant committed that crime by one specific manner or means. *Ngo*, 175 S.W.3d at 745; *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991). The phrase "manner or means" describes <u>how</u> the defendant committed the specific criminal act, which is the *actus reus*. *Ngo*, 175 S.W.3d at 745-46; *Schad*, 501 U.S. at 630 (noting that the act of "murder" was the *actus reus* of the offense, and whether it was premeditated or committed during the course of robbery described "how" the murder was committed). The State is permitted to plead alternate "manner and means" of committing the same offense. *Landrian*, 268 S.W.3d at 535; *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) (State is required to set out each separate offense in a separate count, but may allege different methods of committing the same offense in separate paragraphs within a single count).

The Legislature has considerable discretion in defining crimes and the manner and means in which those crimes can be committed. *Landrian*, 268 S.W.3d at 536 (in deciding what elements and facts a jury must unanimously agree on, courts implement the legislative intent behind the penal provision). That legislative discretion is limited only by the Due Process Clause of the

United States Constitution and by the Due Course of Law provision of the Texas Constitution.  *Id.* at 535; *Schad*, 501 U.S. at 632 (stating that the Due Process Clause places limits on "a State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense, thereby permitting a defendant's conviction without jury agreement as to which course or state actually occurred").  The question of what the jury must be unanimous about is determined by the legislative intent of the applicable statute.  *Valdez v. State*, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007) (it is the legislature, not the courts, that defines the forbidden act, the required culpability, and the particular result, if any); *Pizzo*, 235 S.W.3d at 714 (appellate court examines the statute defining the offense to determine whether legislature created multiple, separate offenses, or a single offense with different methods or means of commission).

The rule of thumb for determining what is the *actus reus* of an offense, i.e., the forbidden conduct about which the jury must be unanimous, and what is "the mere means of satisfying the *actus reus* element of an offense," is a simple "eighth grade grammar" test that looks to the statutory verb defining the criminal act.  *Stuhler v. State*, 218 S.W.3d 706, 717-19 (Tex. Crim. App. 2007) (applying the test discussed in Justice Cochran's concurring opinion in *Jefferson v. State*, 189 S.W.3d 305, 314-16 (Tex. Crim. App. 2006) (Cochran, J., concurring)).  Justice Cochran described the analysis as follows:

> In sum, we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt.  At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged).  Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense.  They are not the gravamen of the offense, nor elements on which the jury must be unanimous.

*Jefferson*, 189 S.W.3d at 315-16 (Cochran, J., concurring) (footnote omitted).  Therefore, in order to identify the essential elements, or gravamen of the offense, on which the jury must be

unanimous, the court diagrams the statutory text to discern (1) the subject, (2) the main verb, (3) the direct object of the verb if one is required, as it is for a result-oriented crime, (4) the requisite mental state, and (5) the specific occasion. *Pizzo*, 235 S.W.3d at 714-15. The means of commission, which are "nonessential unanimity elements," are generally set forth in adverbial phrases commonly introduced by the preposition "by" which describe how the offense was committed. *Id.* at 715. Different means of commission may be presented in a disjunctive jury instruction when the charging instrument alleges the different means within a single count. *Id.*

### Count I:  Human Trafficking

Moreno asserts that Paragraphs A and B of Count I constituted different criminal acts and thus separate criminal offenses instead of merely alternative means of committing the same single offense. He bases his argument on the fact that the main verb in Paragraph A is "traffic," while the main verb in Paragraph B is "benefit." Therefore, he contends the disjunctive submission in the jury charge under Count I violated his right to a unanimous jury verdict.

The Texas legislature has defined the offense of human trafficking in section 20A.02 of the Penal Code to provide in relevant part that:

(a)  A person commits an offense if the person:

(1) knowingly traffics another person with the intent or knowledge that the trafficked person will engage in forced labor or services; or

(2) intentionally or knowingly benefits from participating in a venture that involves an activity described by Subdivision (1), including by receiving labor or services the person knows are forced labor or services.

Act of June 6, 2007, 80th Leg., R.S., ch. 258, § 16.02, 2007 Tex. Gen. Laws 392 (amended 2009, 2011) (current version at TEX. PENAL CODE ANN. § 20A.02(a) (West Supp. 2012)). Because Moreno's offense was committed in 2007 before the 2009 and 2011 amendments to section 20A.01 and 20A.02, the prior law applies to this case. In 2007, the definition of "forced labor or services"

in section 20A.01 included "conduct that constitutes an offense under Section 43.02," i.e., prostitution. Act of June 6, 2007, 80th Leg., R.S., ch. 258, § 16.01, 2007 Tex. Gen. Laws 392 (amended 2011) (current version at TEX. PENAL CODE ANN. § 20A.01(1) (West Supp. 2012))

Count I of the indictment charged Moreno with the offense of human trafficking, with Paragraph A tracking the statutory language of subsection (a)(1) and Paragraph B tracking the language of subsection (a)(2). *Id.* § 20A.02(a). The court's charge instructed the jury it could find Moreno guilty of the offense of trafficking if it found that he knowingly trafficked J.C. with intent that she would engage in forced labor or services, or that he knowingly benefitted from participating in a venture that involved knowingly trafficking J.C. with intent that she would engage in forced labor or services. Moreno asserts this disjunctive instruction did not protect his right to a unanimous jury in that Paragraph B of Count I required the State to prove he had the intent and knowledge to perform a different criminal act from that in Paragraph A, and thus constituted a separate crime, not merely an alternate manner and means. The jury was also instructed it could find Moreno guilty under the law of parties.

The issue is whether the disjunctive instruction required the jury to unanimously agree that Moreno committed the gravamen of the Count I offense, i.e., the forbidden conduct or the *actus reus*, of human trafficking. In other words, we must determine whether the disjunctive submission in the application paragraph contained different criminal acts or merely instructed as to different means of committing a single offense. *See Holford v. State*, 177 S.W.3d 454, 461 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd). Jury unanimity is not affected if the disjunctive charge merely addressed different means of committing a single offense. *Jefferson*, 189 S.W.3d at 312-13. As noted, the gravamen of the offense is typically indicated by the statutory verb used to describe the offense. *Stuhler*, 218 S.W.3d at 717-19. Here, the statutory verb defining the forbidden conduct is "traffic" in section 20A.02(a)(1) and "benefit from participating" in trafficking in section

20A.02(a)(2). TEX. PENAL CODE ANN. § 20A.02(a)(1), (2); *see Ramos v. State*, No. 13-06-00646-CR, 2009 WL 3210924, at *9-10 (Tex. App.—Corpus Christi Oct. 8, 2009, no pet.) (mem. op., not designated for publication) (stating that "traffic" is the statutory verb in section 20A.02(a)(1)). To "traffic" means to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE ANN. § 20A.01(4) (West Supp. 2012).

The Corpus Christi Court of Appeals is the only court to have addressed the issue of whether human trafficking is a result-oriented or conduct-oriented offense. In *Ramos*, the court explained that, "[t]he focus of the offense of trafficking persons is on whether a person traffics with an intent to effect the result specified in the statute – 'that the trafficked person will engage in forced labor or services.'" *Ramos*, 2009 WL 3210924, at *9 (analyzing subsection (a)(1) of section 20A.02). Therefore, the court concluded that human trafficking is a result-oriented offense. *Id.* In a "result of conduct" offense, different types of results are considered to be separate offenses, while different types of conduct used to obtain the result are not. *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008).

Here, each of the disjunctive portions of the application paragraph contained the single core criminal act of trafficking, with the same intended result that the trafficked person engage in forced labor or services – subsection (a)(2) of section 20A.02 expressly incorporates the "activity described by Subdivision (1)," i.e., trafficking with intent that the trafficked person engage in forced labor or services. Thus, by returning a guilty verdict, whether under (a)(1) or (2), the jury in this case agreed on the gravamen of the offense by finding that Moreno either trafficked, or benefitted from participating in trafficking, another person (J.C.) with the intent that J.C. would engage in forced labor or services. The disjunctive jury charge did not set forth two separate criminal acts, but rather two different types of conduct used to obtain the same result; therefore, there was no charge error.

**Count II: "Super" Aggravated Sexual Assault of a Child**

Moreno makes the same argument as under Count I, arguing that Paragraphs A, B, and C of Count II constituted different criminal acts and thus separate criminal offenses; therefore, the disjunctive submission in the jury charge under Count II violated his right to a unanimous jury verdict. Again, we begin by examining the statutory language defining the offense. The Texas legislature has defined the offense of aggravated sexual assault of a child in section 22.021 of the Penal Code to provide in relevant part that:

(a) A person commits an offense:

> (1) if the person:
>
> (A) . . .
>
> ; or
>
> (B) intentionally or knowingly:
>
>> (i) causes the penetration of the . . . sexual organ of a child by any means;
>> …
>> ; and
>
> (2) if:
>
> (A) the person:
> . . .
>
>> (ii) by acts or words places the victim in fear that . . . death, serious bodily injury, or kidnapping will be imminently inflicted on any person; [or]
>>
>> (iii) by acts or words occurring in the presence of the victim threatens . . . to cause the death, serious bodily injury, or kidnapping of any person; [or]
>>
>> . . .
>>
>> (v) acts in concert with another who engages in conduct described by Subdivision (1) directed toward the same victim and occurring during the course of the same criminal episode; . . .

; [or]

   (B)  the victim is younger than 14 years of age; or

   (C)  the victim is an elderly . . . or a disabled individual.

TEX. PENAL CODE ANN. § 22.021(a) (West Supp. 2012).

A "child" for purposes of aggravated sexual assault is defined as a person younger than 17 years of age.  TEX. PENAL CODE ANN. § 22.021(b)(1) (West Supp. 2012).  In relevant part, there are three alternative ways that the sexual assault defined under subsection (a)(1) becomes "aggravated" under (a)(2)—by the defendant's threatening acts or words or actions in concert with another, if the victim is a child younger than 14 years of age, or if the victim is elderly or disabled. TEX. PENAL CODE ANN. § 22.021(a)(2)(A)-(C).  Further, the minimum term of imprisonment for the first degree felony offense of aggravated sexual assault is enhanced to 25 years if the victim was younger than 14 years old at the time of the offense and the offense was committed "in a manner described by Subsection (a)(2)(A)."  TEX. PENAL CODE ANN. § 22.021(f)(2) (West Supp. 2012) (emphasis added).  Commission of the offense under subsection (f)(2), which effectively replaces the "or" between subsection (a)(2)(A) and (a)(2)(B) with an "and," is what Moreno was charged with and what the court and parties referred to as "super" aggravated sexual assault of a child.

The charge instructed the jury that a person commits aggravated sexual assault of a child if he commits sexual assault and the victim is younger than 14 years of age.  It then instructed the jury that a person commits "super" aggravated sexual assault of a child if he commits aggravated sexual assault of a child and places the victim in fear of imminent death or serious bodily injury, or threatens to cause any person's death, serious bodily injury or kidnapping, or acts in concert with another who commits sexual assault against the same victim during the course of the same

criminal episode. The application paragraph instructed the jury it could find Moreno guilty of the offense of "super" aggravated sexual assault of a child if it found he engaged in the conduct described by Paragraph A, B, or C. As with Count I, the jury was also instructed it could find Moreno guilty under the law of parties.

As noted, supra, Count II of the indictment charged Moreno with the offense of "super" aggravated sexual assault of a child in three separate paragraphs. Each of the three paragraphs alleged that J.C. was a child younger than 14 years old—which is itself an aggravating element under the statute sufficient to constitute aggravated sexual assault of a child. However, in order to convict Moreno of "super" aggravated sexual assault of a child, as charged, the State also had to prove one of the means under subsection (a)(2)(A).

Paragraphs A & B — Paragraph A tracked the language of subsection 22.021(a)(1)(B)(i), alleging that Moreno penetrated J.C.'s sexual organ with his sexual organ, and *by acts and words Moreno placed J.C. in fear of imminent* serious bodily injury or death, tracking the language of subsection (a)(2)(A)(ii). Paragraph B also tracked the language of subsection (a)(1)(B)(i), alleging Moreno penetrated J.C.'s sexual organ with his sexual organ, and *by acts and words occurring in J.C.'s presence Moreno threatened* to cause her death, serious bodily injury or kidnapping, tracking subsection (a)(2)(A)(iii). Thus, both Paragraphs A and B alleged the same core sexual assault, i.e., penetration of J.C.'s female sexual organ by Moreno's male sexual organ, which the structure of the statute makes clear is the *actus reus* or gravamen of the offense. Paragraphs A and B then alleged alternative aggravating factors or "manner and means," in addition to J.C.'s age under 14 years, in order to satisfy the "super" aggravating element under subsection (f)(2). *See* TEX. PENAL CODE ANN. § 22.021(f)(2) (providing for a 25-year minimum imprisonment term if the victim was a child younger than 14 years and the offense was committed "in a *manner*" described by Subsection (a)(2)(A)). Thus, by its plain language, subsection (f)(2) recognizes that

the alternatives listed under subsection (a)(2)(A) are "manners" of committing the offense of aggravated sexual assault of a child. Therefore, the disjunctive submission of Paragraphs A and B was not error.

In addition, sexual offenses have been characterized as conduct-oriented crimes, and therefore different types of conduct specified in the various statutes constitute separate offenses. *Huffman*, 267 S.W.3d at 906; *Vick v. State*, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999) (aggravated sexual assault is a "conduct-oriented offense in which the legislature criminalized very specific conduct of several different types" constituting separate statutory offenses that may be separately prosecuted). However, in some criminal statutes the "focus" or "gravamen" of a conduct-oriented offense may not be the conduct itself, but rather the "circumstances surrounding the conduct." *Huffman*, 267 S.W.3d at 907. In that case, different types of conduct could establish alternate means of committing the same single offense rather than different offenses—so long as the circumstances surrounding the conduct are the same. *Id.* This is the focus of the offense of "super" aggravated sexual assault of a child as defined by section 22.021(f)(2).

Paragraph C — Finally, Paragraph C alleged that *Moreno acted in concert with Juan Moreno* by holding and tying down J.C. for Juan during the course of the same criminal episode, and Juan penetrated J.C.'s sexual organ with his sexual organ. TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(v) (emphasis added). Paragraph C does not allege that Moreno engaged in any conduct defined by subsection (a)(1)(B), as Paragraphs A and B do, which appears to be required under the statutory structure created by the legislature. Instead, Paragraph C only alleges that Moreno acted in concert with a third party under subsection (a)(2)(A)(v). Paragraph C required the jury to find that the third person, here Juan Moreno, "engage[d] in conduct described by Subdivision (1)" directed at the same victim and during the same criminal episode. *Id.* Therefore, under Paragraph C, instead of Moreno engaging in the core criminal act—penetration of J.C.'s

sexual organ by a male sexual organ—Juan's conduct constituted the sexual assault conduct under subsection (a)(1)(B)(i), and Moreno's conduct facilitated the sexual assault.

However, even if the disjunctive submission of Paragraph C was error, Moreno has not shown he suffered actual, egregious harm. *See Cosio v. State*, 353 S.W.3d 766, 777-78 (Tex. Crim. App. 2011) (discussing what may constitute a showing of actual egregious harm when jury charge permits a non-unanimous verdict). Here, as in *Cosio*, Moreno's defense was not based on a distinction between the various legal theories of committing the offense. Rather, his entire defense was that J.C. was not credible and made up the entire story to explain her disappearance and failure to report to her probation officer during the two-week period. *Id.* Moreover, in Moreno's case, the jury was permitted to convict him as a party with Juan on *any* of the legal theories submitted to it.

### *Double Jeopardy – Multiple Punishments for Same Offense: Count I (Human Trafficking) & Count IV (Compelling Prostitution)*

In his third issue, Moreno argues his constitutional right against double jeopardy was violated when he was punished for both the offense of human trafficking by forcing J.C. to engage in prostitution and the offense of compelling prostitution, which he asserts is a lesser-included offense of human trafficking as pled in the indictment. The State responds that the two crimes are different offenses because trafficking only requires the "intent that the trafficked person engage in forced labor or services," while compelling prostitution requires the defendant to cause the victim to commit prostitution. *See* TEX. PENAL CODE ANN. § 20A.02(a); *id.* § 43.05(a) (West Supp. 2012). Further, the State notes that, even if the two offenses were the same for purposes of double jeopardy, the legislature has expressly stated that a defendant may be prosecuted for both.

The Double Jeopardy Clause protects a defendant against multiple punishments for the same offense. U.S. CONST. amend. V, XIV; TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006);

*Brown v. Ohio*, 432 U.S. 161, 165 (1977). To determine whether there have been multiple punishments for the same offense, the court applies the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 304 (1932), and considers whether each provision requires proof of an additional fact which the other does not. *Id.*; *Ex parte Denton*, Nos. AP-76,801, AP-76,802, 2013 WL 2212917, at *4 (Tex. Crim. App. May 22, 2013). A multiple punishments double jeopardy violation occurs if both a greater and lesser included offense are alleged, and the same conduct is punished once for the greater offense and a second time for the lesser offense. *Ex parte Denton*, 2013 WL 2212917, at *4. However, the same elements test for double jeopardy is no more than a rule of statutory construction used to determine legislative intent, and thus it does not trump a clearly expressed legislative intent. *Id.*; *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007); *Garza v. State*, 213 S.W.3d 338, 351-52 (Tex. Crim. App. 2007).

Here, subsection (c) of section 20A.02 governing human trafficking expressly states, "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections." TEX. PENAL CODE ANN. § 20A.02(c) (West Supp. 2012). Therefore, the legislature has clearly expressed its intention that a defendant may be convicted of both human trafficking based on forced prostitution under section 20A.02 and compelling prostitution under section 43.05. *Id.*; TEX. PENAL CODE ANN. § 43.05. Therefore, this issue is overruled.

### *Insufficiency of the Evidence – Count III (Aggravated Kidnapping)*

Finally, Moreno challenges the sufficiency of the evidence to support his aggravated kidnapping conviction. In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The

essential elements of the crime are the elements of the offense as defined by a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists of the statutory elements of the offense as modified by the charging instrument. *Id.*; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). We resolve any inconsistencies in the evidence in favor of the judgment. *Curry*, 30 S.W.3d at 406. This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

Section 20.04(a) of the Penal Code defines the offense of aggravated kidnapping in relevant part as:

> (a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
>
>      ***
>     (3) facilitate the commission of a felony . . . ;
>     (4) inflict bodily injury on [her] or violate or abuse [her] sexually;
>     (5) terrorize [her] or a third person . . . .

TEX. PENAL CODE ANN. § 20.04(a) (West 2011). The relevant definition of "abduct" is "to restrain a person with intent to prevent [her] liberation by secreting or holding [her] in a place where [she] is not likely to be found. . . ." TEX. PENAL CODE ANN. § 20.01(2)(A) (West 2011). To "restrain"

means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (West 2011). Finally, restraint is "without consent" when it is accomplished by "(A) force, intimidation, or deception; or (B) any means, including acquiescence of the victim, if: (i) the victim is a child who is less than 14 years of age . . . and the parent . . . has not acquiesced in the movement or confinement . . . ." *Id.* § 20.01(1)(A), (B)(i).

Count III of the indictment alleged that Moreno intentionally and knowingly abducted J.C. by secreting and holding her in a place where she was not likely to be found, with intent to violate and abuse her sexually, to inflict bodily injury on her, to terrorize her, and to facilitate the commission of a felony, to-wit: compelling prostitution. The jury charge tracked the indictment, but also instructed the jury that it could find Moreno guilty whether it found he acted alone or together as a party with another in committing aggravated kidnapping, as defined in the charge.

Moreno challenges the sufficiency of the evidence on the element of "abduction," arguing there is no evidence to support the jury's finding that J.C. was "secreted" or "held in a place where she was unlikely to be found" because the evidence showed she was never moved, but was located in the same house where she voluntarily went to buy drugs during the entire two-week incident, and that several men came to the house during that time and saw J.C. there. Moreno also points to Ojeda's testimony that he saw J.C. at a window and standing in the front doorway on the day he helped her escape, and did not observe any marks on her indicating she had been restrained or injured in any way.

J.C. testified that when she went to the house with her friend, Flor, Moreno and his brother Juan initially locked her inside the bathroom to prevent her from leaving the house, and deceived Flor by telling her that J.C. had already left the house. J.C. testified she was screaming for help, but Flor did not hear her. J.C. stated that Moreno and his brother then forcibly moved her from

- 17 -

the bathroom into a bedroom, removed her clothes, and tied her down on the bed using a rope, thereby restraining her inside the back bedroom. Moreno and his brother Juan then sexually assaulted J.C., and later that afternoon brought in another man who also sexually assaulted her. Further, J.C. testified that during the ensuing two-week period she was kept tied down on the bed, first with a rope and then with a t-shirt, and was not even allowed to leave the bed to use the bathroom. J.C. also testified that Moreno verbally threatened to hurt her and her family if she ever tried to escape or tell anyone about what was happening, and threatened her with a knife at least once. She also testified that Moreno and his brother injected her with drugs to prevent her from struggling during the sexual assaults. On the day of her escape, J.C. testified that Moreno and his brother untied her and permitted her to clean up because they were expecting a visit from a state official. J.C. testified she was too afraid to ask the state official for help, but that she tried to run out of the house as the state official was leaving but was restrained by Moreno and his brother.

Under the plain language of the statute, as charged in the indictment and set forth in the charge, the jury was authorized to find Moreno "abducted" J.C. if it found that he "restrained" J.C. with intent to prevent her liberation by secreting or holding her where she was unlikely to be found, i.e., if it found he restricted her movements without consent, so as to substantially interfere with her liberty, by moving her or by confining her. *See* TEX. PENAL CODE ANN. § 20.01(1), (2)(A).

J.C.'s testimony supports a finding that Moreno "restricted her movements without consent by confining her," thereby substantially interfering with her liberty, in that she was prevented from leaving the house by physical force and was confined inside a back bedroom by physical restraints, without her consent or that of her parent, thereby supporting a reasonable inference J.C. was kept in a place where she was unlikely to be found. *See* TEX. PENAL CODE ANN. § 20.01(1)(A), (B)(i) (defining restraint "without consent" to mean when it is accomplished by force, intimidation, or

deception, or by any means, including acquiescence, when the victim is a child under the age of 14 years old and the parent has not consented).

The offense of kidnapping does not require that the defendant restrain the victim for any particular period of time, or that the victim be moved any particular distance. *Santellan v. State*, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997); *Brimage v. State*, 918 S.W.2d 466, 475 (Tex. Crim. App. 1994) (moving victim from room to room while attempting to kill her was sufficient to prove restraint). The requirement of "substantial interference with the victim's liberty" in section 20.01(1) does not require any quantitative amount of interference. *Brimage*, 918 S.W.2d at 478. Further, the requirement of "secreting" or "holding the victim in a place where she is not likely to be found," which Moreno challenges, is part of the *mens rea* or culpable mental state of the offense; the *actus reus* of the offense is the "restraint." *Id.* at 475-76. Once restraint is established, the offense of kidnapping is complete when the actor evidences a specific intent to prevent liberation. *Id.*; *Megas v. State*, 68 S.W.3d 234, 240 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Proof that the victim was kept isolated from anyone who might provide assistance satisfies the element of secreting or holding in a place where the victim is not likely to be found. *Megas*, 68 S.W.3d at 240 (citing *Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985)). Finally, with respect to the conflicting evidence as to whether there was electricity inside the house while J.C. was there, and the absence of any marks on J.C. when she later reported the incident, we defer to the jury's resolution of any conflicts in the evidence and its assessment of the witnesses' credibility. *Brooks*, 323 S.W.3d at 899; *Curry*, 30 S.W.3d at 406.

Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Moreno "abducted" J.C. within the meaning of sections 20.01 and 20.04. Moreno's sufficiency issue is overruled.

**CONCLUSION**

Based on the foregoing reasons, we overrule Moreno's issues and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

PUBLISH