**MODIFY and AFFIRM; and Opinion Filed June 4, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00255-CR

### No. 05-18-00256-CR

**RICKY ALAN SINGLETON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F16-76725-I, F17-75059-I**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

A grand jury indicted Ricky Alan Singleton for sexual assault, continuous trafficking of persons, and compelling prostitution. Appellant pleaded not guilty to all three indictments, and the State presented all three cases to the same jury in a consolidated proceeding. The jury found appellant guilty of sexual assault and of trafficking of persons, and not guilty of compelling prostitution. Appellant now urges that his convictions for both sexual assault and trafficking violate the Fifth Amendment prohibition against multiple punishments for the same offense. In addition, appellant challenges the sufficiency of the evidence to support his conviction for trafficking and claims he was egregiously harmed by jury charge error. By cross appeal, the State urges that the trial court's judgment in the trafficking case should be modified to correctly state the degree of the offense and that appellant is subject to the registration requirements of chapter

62 of the Texas Code of Criminal Procedure. We affirm the trial court's judgment in the sexual assault case and, as modified herein, affirm the judgment in the trafficking case. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Appellant was charged with three offenses arising out of events that occurred during the approximate three month disappearance of the fourteen-year old complainant, C.T. One of the indictments alleged:

> [t]hat RICKY ALAN SINGLETON, hereinafter called Defendant, on or about and between the 1st day of September, 2016 and the 29th day of November, 2016 in the County of Dallas, State of Texas, did then and there intentionally and knowingly cause the PENETRATION OF THE FEMALE SEXUAL ORGAN of [C.T.], a child younger than 17 years of age, by any means, to-wit: DEFENDANT'S SEXUAL ORGAN.

Another alleged:

> [t]hat RICKY ALLEN SINGLETON, hereinafter called Defendant, on or about and between the 1st day of September, 2016, and the 29th day of November, 2016, in the County of Dallas, State of Texas, did unlawfully then and there knowingly cause [C.T], a person younger than 18 years of age to commit prostitution.

And the final indictment alleged:

> [t]hat RICKY ALLEN SINGLETON, hereinafter called the Defendant, on or about and between the 1st day of September, 2016, and the 29th day of November, 2016, in the County of Dallas, State of Texas, did then and there, intentionally and knowingly, during a period that was 30 days or more in duration, commit two or more acts of trafficking of persons, to-wit, knowingly traffic [C.T], a child, by transporting, enticing, recruiting, harboring, providing and obtaining the said, [C.T.], and by any means cause [C.T.] to engage in or become the victim of sexual assault and prostitution.

The evidence at trial consisted of C.T.'s testimony that in 2016 she lived with her grandmother and seven siblings. She felt like she was blamed for things she did not do, and was not understood, so she ran away from home shortly before her fifteenth birthday. A week or two later, a friend introduced her to appellant, who was thirty years old at the time. Appellant was homeless and selling bottled water in the West End of Dallas. C.T. was charmed by appellant and

accompanied him to an abandoned apartment where they smoked marijuana and had sex. This pattern of conduct continued for three to four weeks.

According to C.T., thereafter, things changed. Appellant took her to an apartment where she first encountered two other men. She and appellant began to argue. Appellant then hit her in the face with a closed fist. Appellant left the room. One of the other men then entered and started touching her. She left the room and confronted appellant, declaring she was not stupid and was not "one of [appellant's] sex toys." In response, appellant slapped her in the face, instructed her to return to the other room, and told her that she knew what she was supposed to be doing. At that point, C.T. first realized she was supposed to be making money for appellant. She felt she had no choice because she was young, did not have any money, and did not have any place to stay. She returned to the room and had sex with the first man who entered the room, followed by the second.

C.T. explained that after this incident, she went back and forth between her grandmother and appellant. She explained that she returned to appellant for love and attention, though she was also afraid of him. She also testified that Appellant threatened to kill her family if she ever failed to come back to him. She believed appellant had the ability to carry out his threats.

C.T. further testified that appellant took her to Harry Hines Boulevard, where she would walk the street until someone pulled over. Men gave her money in exchange for performing various sex acts, she would then give the money to appellant. At some point, C.T. stopped having sex with men other than appellant, and she eventually returned to her grandmother.

The State also called C.T.'s grandmother to testify about her efforts to find C.T. after she first ran away and through the period covering her encounters with appellant. In addition, the State called an officer who worked in the high-risk victims unit who had interviewed C.T. at a hospital, a detective in the trafficking squad and crimes against children unit to explain to the jury how perpetrators of offenses against children typically groom their victims, and a sergeant for the Dallas

Police Department who supervises the child exploitation squad and high-risk victims unit to testify to the phenomenon of gradual disclosure.

Appellant testified at trial. He claimed he did not know C.T., never took her to any abandoned apartments, did not have sex with her, and had never directed her to offer herself for sex practices along Harry Hines Boulevard.

After the jury found appellant guilty of two of the charged offenses, it assessed punishment at five years' confinement for each offense, and recommended that the court suspend the imposition of the sentence. The trial court entered judgments on the verdicts, suspended appellant's sentences, and placed appellant on community supervision for ten years. This appeal followed.

DISCUSSION

## I.     Double Jeopardy

In his sole issue on appeal of his conviction for sexual assault, appellant contends that his conviction for sexual assault, in addition to his conviction for trafficking of persons, violates the double jeopardy prohibition against multiple punishments for the same offense. More particularly, appellant contends that the object offense in the trafficking indictment is necessarily the same sexual assault as the one alleged in the sexual assault indictment and that punishment for both violates the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects a defendant against multiple punishments for the same offense. U.S. CONST. Amend. V, XIV; *Brown v. Ohio*, 432 U.S. 161, 164 (1977); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09. To determine whether there have been multiple punishments for the same offense, we apply the "same elements" test of *Blockburger v. United States*, and consider whether each provision requires proof of an additional fact which the other does not. 284 U.S. 299, 304

(1932). A multiple punishments double jeopardy violation occurs if both a greater and lesser included offense are alleged, and the same conduct is punished once for the greater offense and a second time for the lesser offense. *Ex parte Denton,* 399 S.W.3d 540, 545–46 (Tex. Crim. App. 2013). However, the same elements test for double jeopardy is no more than a rule of statutory construction used to determine legislative intent, and thus it does not trump a clearly expressed legislative intent. *Id.* at 546*; Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007).

Here, subsection (c) of section 20A.02 of the penal code, governing human trafficking, expressly states, "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections." TEX. PENAL CODE ANN. § 20A.02(c). Therefore, the Legislature has clearly expressed its intention that a defendant may be convicted of both human trafficking based on sexual assault under section 20A.02 and sexual assault under section 22.011(a)(2) of the penal code. *Id.* § 22.011(a)(2). Therefore, we overrule appellant's sole issue concerning his conviction for sexual assault.

## II.      Sufficiency of the Evidence

In his first two issues on his appeal of his conviction for trafficking of persons, appellant contends the evidence is legally insufficient to prove he committed trafficking by causing C.T. to become the victim of sexual assault, or to engage in prostitution. *See* PENAL §§ 20A.02(a)(7)(C) and 20A.02(a)(7)(E).

When reviewing whether there is legally sufficient evidence to support a criminal conviction, we view the evidence in the light most favorable to the prosecution, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder with resolving conflicts in

the testimony, weighing the evidence, and drawing any reasonable inferences the evidence might support. *See id.*

A court should measure the sufficiency of evidence by the elements of the offense as defined by the hypothetically correct jury charge for the offense charged. *Horton v. State*, 394 S.W.3d 589, 592 (Tex. App.—Dallas 2012, no pet.) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). As relevant here, a person commits the offense of trafficking of persons if the person knowingly traffics a child and by any means causes the trafficked child to engage in, or become the victim of, sexual assault or prostitution. PENAL §§ 20A.02(a)(7)(C) (sexual assault), (E) (prostitution). "Traffic" means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means. *Id.* § 20A.01(4).

Appellant contends that his trafficking conviction under the sexual-assault theory cannot stand because the same person cannot be the trafficker and the exploiter of a child by sexual assault. We need not determine whether the trafficker and the exploiter have to be different persons because the State presented evidence that, on at least one occasion, appellant trafficked C.T. and caused her to have sexual relations with two other men. Although appellant vigorously attacked C.T.'s credibility and denied her accusations through his own testimony, the jury was free to weigh the credibility of the witnesses and believe C.T.'s testimony over appellant's. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When viewed in the light most favorable to the prosecution, the evidence is sufficient to support a sexual-assault theory for the trafficking conviction.

When we undertake to review the sufficiency of the evidence and, as was the case here, the trial court's charge authorized the jury to convict on two different theories, sexual assault and prostitution, the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories. *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). Having concluded that the

evidence supports the sexual-assault theory of trafficking, we need not determine whether the evidence also supports the prostitution theory of trafficking. *Id.* We overrule appellant's first and second issues concerning his trafficking conviction.

### III. Jury Charge

In his final issue concerning his conviction for trafficking, appellant claims that the trial court's jury charge allowed the jury to return a non-unanimous verdict. We liberally construe appellant's argument to be the trial court submitted an erroneous instruction on the requisite mental state[1] and in submitting the means and manner by which he committed the offense in the disjunctive.[2] This he argues, redefined the statute from a result-oriented offense to a conduct-oriented offense and allowed for a non-unanimous verdict as to the conduct that constituted trafficking.

We analyze an allegation of jury charge error in two steps, first determining whether error exists and then whether the resulting harm requires reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Under *Almanza*, the degree of harm necessary for reversal depends on whether appellant objected to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds as stated in Rodriguez v. State*, 758 S.W.2d 787 (1988). When there is no objection to the charge, this Court will review the claimed error but will not reverse unless the record shows "egregious harm." *Id.*

At the charge conference, appellant announced that he had no objection to the charge.

---

[1] The jury charge defined "intentionally" and "knowingly" as follows:

A person acts intentionally, *or* with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, *or* with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Thus, the court included both nature-of-conduct and result-of-conduct language in its instruction concerning the mental states.

[2] Appellant does not complain about the jury charge's reference to sexual assault and prostitution in the disjunctive. Thus, we will not consider or decide whether that submission was error.

Accordingly, we will not reverse appellant's conviction unless the record shows appellant suffered egregious harm as a result of a jury charge error. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011).

The culpable mental state definitions in the charge must be tailored to the conduct elements of the charged offense. *Patrick v.* State, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995). Offenses may involve three conduct elements: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *See Ash v. State*, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.). A particular offense may contain one or more of these conduct elements. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Appellant and the State concede that the court of criminal appeals has not determined which conduct elements apply to the offense of trafficking of persons. While two of our sister courts of appeals have concluded that trafficking is a result-oriented offense because it punishes a person for knowingly causing a child to engage in or become the victim of criminal conduct regardless of the manner in which the person traffics the child and regardless of the manner of causing the child to be victimized, *see Moreno v. State*, 413 S.W.3d 119, 127 (Tex. App.—San Antonio 2013, no pet.); *Ramos v. State*, No. 13-06-00646-CR, 2009 WL 3210924, at *9–10 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2009, no pet.) (mem. op., not designated for publication), until the court of criminal appeals classifies trafficking of persons as either a result or nature of the conduct offense, or both, it is not error for the trial court to submit the complete definition of intentionally and knowingly, as the trial court did here. *Harvey v. State*, No. 05-01-00998-CR, 2002 WL 959987, at *2 (Tex. App.—Dallas May 10, 2002, no pet.) (not designated for publication).

Moreover, assuming, without deciding, submitting the complete definitions of knowingly and intentionally to the jury was erroneous, it was not so egregious as to require reversal of the trial court's judgment. In determining whether appellant was deprived of a fair and impartial trial by the alleged error in defining the requisite mental state, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Taylor*, 332 S.W.3d at 489. Additionally, in assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Patrick*, 906 S.W.2d at 493.

In this case, the trial court limited the scope of the definitions in the application paragraph to the alleged conduct:

> [I]f you believe from the evidence beyond a reasonable doubt that the defendant, Ricky Alan Singleton, on or about and between the 1st day of September, 2016, and the 29th day of November, 2016, in the county of Dallas and state of Texas, did knowingly traffic [C.T.], a child, by transporting, enticing, recruiting, harboring, providing and obtaining the said [C.T.], and by any means cause [C.T] to engage in, or become the victim of, sexual assault or prostitution, you will find the defendant guilty of the offense of trafficking of persons, as included in the indictment.

Thus, the jury was instructed that it could convict appellant of trafficking if he knowingly caused C.T. to engage in or become the victim of criminal conduct. This application paragraph correctly instructed the jury on the law applicable to the case. PENAL §§ 20A.02(a)(7)(C), 20A.02(a)(7)(E).[3] When the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *Patrick*, 906 S.W.2d at 493.

---

[3] The Texas Legislature has defined the offense of human trafficking in section 20A.02 of the penal code to provide, in relevant part, that "A person commits an offense if the person knowingly: . . . traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by: . . . Section 22.011 (Sexual Assault); [or] . . . Section 43.02 (Prostitution). PENAL §§ 20A.02(a)(7)(C), 20A.02(a)(7)(E).

Additionally, this was not a case in which intent was a contested issue at trial. Rather, appellant denied even knowing C.T. and his trial strategy was to attack C.T.'s credibility. Thus, throughout trial and during closing arguments, the parties focused on the credibility of C.T. and appellant, not on whether appellant possessed the culpable mental state required to commit the offense. On this record, we cannot conclude that the alleged charge error affected the very basis of the case, deprived appellant of a valuable right, vitally affected the defensive theory, or make the case for conviction clearly and significantly more persuasive. *See Taylor*, 332 S.W.3d at 490.

Appellant's complaint concerning the listing of the manner and means of trafficking[4] in the disjunctive, rather than the conjunctive, is without merit. The jury must agree that the defendant committed the same, single, specific criminal act, but need not unanimously agree on the manner and means by which the defendant committed the act. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006).

Because the trial court did not err in defining the requisite mental state, because the record does not establish appellant suffered egregious harm from an alleged error in the definition, and because the jury need not unanimously agree on the manner and means by which appellant committed the offense, we overrule appellant's final issue concerning his trafficking conviction.

## IV. Modification of Judgment

By cross appeal, the State contends that the judgment in the trafficking case should be modified to correctly state the degree of the offense of conviction and that appellant is subject to the registration requirements of Texas Code of Criminal Procedure chapter 62.

The trial court's judgment is required to reflect the degree of the offense of conviction and whether the defendant's conviction subjects him to the sex-offender registration requirements of

---

[4] The trial court's charge included the statutory definition of traffic. PENAL § 20A.01(4) (Traffic means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means).

chapter 62 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 42.01, §1(14), (27). The trial court's written judgment in the trafficking case shows the degree of offense as a second-degree felony and that appellant is not subject to the registration requirements of chapter 62. The jury convicted appellant of the offense of trafficking of persons under penal code section 20A.02(a)(7). An offense under section 20A.02(a)(7) is a first-degree felony. PENAL § 20A.02(b)(1). It is also a reportable conviction under chapter 62. CRIM. PROC. art. 62.001(5)(K).

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we sustain the State's cross-issue and modify the trial court's judgment in the trafficking case to (i) reflect appellant was convicted of a first-degree felony, and (ii) show that the conviction subjects appellant to the registration requirements of chapter 62.

## CONCLUSION

We affirm the trial court's judgment in the sexual assault case, and, as modified, affirm the trial court's judgment in the trafficking case.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

180255F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

RICKY ALAN SINGLETON, Appellant

No. 05-18-00255-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F16-76725-I.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of June, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICKY ALAN SINGLETON, Appellant

No. 05-18-00256-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F17-75059-I.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> To reflect that Ricky Alan Singleton was convicted of a first-degree felony and that appellant is subject to the registration requirements of chapter 62 of the Texas Code of Criminal Procedure.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of June, 2019.